UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   1:12-CV-22211-JLK

RAANAN KATZ, an individual,
        Plaintiff,

vs.

IRINA CHEVALDINA,
        Defendant.

_____/

## DEFENDANT'S SECOND MOTION TO DISMISS

Defendant, IRINA CHEVALDINA, (hereinafter "CHEVALDINA") hereby files this

motion to dismiss the Amended Complaint (D.E. 10), pursuant to Fed.R.Civ.P. 12(b)(6), filed by

Plaintiff, RAANAN KATZ (herein "KATZ").

## Table of Contents

DEFENDANT'S SECOND MOTION TO DISMISS ................................................................. 1

Introduction ........................................................................................................................ 4

II. Legal Standard………………………………………………………………………...6
III. Argument………………………………………………………………………………7
A. CHEVALDINA's Republication of the Photograph was for a Transformative Purpose and
Possessed the Characteristics of a Critical and Non-Commercial Use…………………………10
  1. The Photograph's Republication Constitutes a Protectable Fair Use Interest. ..................... 10

  2. Defendant's Use of the Photograph was Transformative in its Character. ........................... 11

  3. Defendant's Alleged Infringement of the Photograph was a Noncommercial Purpose. ........ 13

B. The Photograph is Not Creative, and Thus Prone to Fair Use. ............................................... 15

C. The Defendant's Republication of the Entire Photograph Does Not Preclude a Finding of Fair
Use. ...................................................................................................................................... 18

D. CHEVALDINA's Use of the Photograph Could Not Have Had an Effect on its Potential
Market, If One Even Existed. ................................................................................................. 20

IV. Conclusion .................................................................................................... 24


**Cases**

Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283 (11th Cir. 2010) .............................. 6
Arriba Soft Corporation, 336 F.3d at 811 .............................................. 12, 16, 18, 19, 22
Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009)...................................... 6
Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1542 (11th Cir. 1996) .............................. 8
Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir. 2012) ............ 4, 8, 9
Calkins v. Playboy Enters. Int'l, Inc., 561 F. Supp. 2d 1136, 1142-43 (E.D. Cal. 2008) ............ 18
Campbell v. Acuff-Rose Music, 510 U.S. 569 (1994)............................ 7, 9, 12, 13, 18
DeSilva Const. Corp. v. Herrald, 213 F.Supp. 184 (MD Fla. 1962) ........................... 22
Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1399   (9th Cir. 1997)....... 7
eBay v. MercExchange, LLC, 547 U.S. 388 (2006)...................................................... 21
Elsmere Music, Inc. v. Nat'l Broadcasting Co., 482 F. Supp. 741, 747 (S.D.N.Y. 1980) ........... 20
Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007)....................................... 6
Field v. Google, Inc., 412 F. Supp. 2d 1106, 1121 (D. Nev. 2006).............................. 21
Financial Information, Inc. v. Moody's Investors Service, Inc., 751 F.2d 501, 509 (2d Cir. 1984)) ................................................................................................................ 17
Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc., 841 F. Supp. 2d 1274 (S.D. Fla. 2012).................................................................................................................. 6, 7
Fuentes v. Mega Media Holdings, Inc., 2011 U.S. Dist. LEXIS 70996 (S.D. Fla. 2011) ... 8, 9, 12, 15, 18
Harper & Row Publishers v. Nation Enters., 471 U.S. 539 (1985) ............ 9, 14, 15, 16, 20
Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ....................................... 4
Hofheinz v. A&E Networks, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y. 2001) ................... 12
Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)................................................ 4
Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148 (9th Cir. 1986). 11, 14, 15, 16, 18, 20
Infodek, Inc. v. Meredith-Webb Printing Co., Inc., 830 F.Supp. 614 (N.D. GA 1993) ............... 22
KCAL-TV, 108 F.3d at 1122 ......................................................................................... 16
Kelly v. Arriba Soft Corporation 336 F.3d 811 (9th Cir. 2003) .................................... 12
Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1238 (11th Cir. 2010)........................ 7, 8
Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 115 n.3 (2d Cir. 1998) ............ 11
Lenbro Holding, Inc. v. Falic, 2012 U.S. Dist. LEXIS 26766 (S.D. Fla. 2012)............ 7
Lorentz v. Sunshine Health Prods., 2010 U.S. Dist. LEXIS 101019 (S.D. Fla. 2010).......... 22
Los Angeles News Svc. v. KCAL-TV Channel 9, 108 F.3d 1119 (9th Cir. 1998) ............ 16
Los Angeles News Svc. v. Reuters Television Int'l, 149 F.3d 987 (9th Cir. 1998)........... 9, 16
Los Angeles News. Svc. v. CBS Broadcasting, Inc., 305 F.3d 924 (9th Cir. 2002) .......... 9, 16
Mathieson v. Associated Press, 1992 U.S. Dist. LEXIS 9269, 15-16 (S.D.N.Y. June 24, 1992) 10
Mattel, Inc. v. Walking Mt. Prods., 353 F.3d 792, 799 (9th Cir. 2003) ......................... 7
Meeropol v. Nizer, 560 F.2d 1061, 1070 (2d Cir. 1977)............................................... 20
Nunez v. Caribbean Int'l News Corp., 235 F.3d 18 (1st Cir. 2000)........................... 11, 17
Perfect 10, Inc. v. Amazon, Inc., 508 F.3d 1146 (9th Cir. 2007) ............ 12, 13, 18, 19, 22

<u>Righthaven v. Hoehn</u>, 792 F. Supp. 2d 1138 (D. Nev. 2011)..................... 7, 12, 16, 18, 19, 21, 22

<u>Salinger v. Colting</u>, 607 F.3d 68 (2d Cir. 2010) ....................................................................... 21

<u>Sedgwick Claims Mgmt. Servs. v. Delsman</u>, 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. 2009) . 12, 18

<u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417 (1984)................................... 14

<u>Sony</u>, 464 U.S. at 451 ................................................................................................................. 20

<u>Stewart v. Abend</u>, 495 U.S. 207, 236 (1990) ............................................................................. 10

<u>SunTrust Bank v. Houghton Mifflin Co.</u>, 268 F.3d 1257 (11th Cir. 2001) ......................... 8, 9, 21

<u>Wainwright Secy's v. Wall Street Transcript Corp.</u>, 558 F.2d 91 (2d Cir. 1977)........................ 20

<u>Weissman v. Freeman</u>, 868 F.2d 1313, 1325 (2d Cir. 1989)........................................................ 16

<u>Wright</u>, 953 F.2d at 736-37 ........................................................................................................ 10

**Statutes**

17 U.S.C. § 107.................................................................................................................. 7, 9, 11

**Treatises**

Nimmer on Copyright § 13.05 ...................................................................................... 7, 9, 12, 14

[Space left Blank]

I.    **Introduction**

This action is the latest attempt by KATZ to censor CHEVALDINA's reporting on

unflattering - but true - aspects of his real estate business. What the First Amendment forbade

KATZ from doing under common law, he now seeks to do under the Copyright Act.    KATZ

cannot do so.

CHEVALDINA authors Internet web logs, or "blogs," critical of Katz's business

practices. The compilation of CHEVALDINA's blogs, Exhibit A and B attached hereto, are

incorporated by reference into the Complaint. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir.

2002). [1]    In CHEVALDINA's writings and articles, she references the underlying court

documents and news reporting by traditional media outlets through either hyperlinking or citing

to her sources - so that readers can access CHEVALDINA's source materials for themselves.

Intolerant or ignorant of CHEVALDINA's First Amendment right to make truthful speech,

KATZ has persisted in more than a year of litigation against the Defendant based upon a

defamation claim. Interestingly, the affirmative defense of fair use is a central argument by

CHEVALDINA in the other defamation litigation over the exact same material.   R.K./Fl

Management, Inc., R.K. Associates VII, Inc., 17070 Collins Avenue Shopping Center, Ltd.,

Raanan Katz, and Daniel Katz v. Irina Chevaldina, Case No. 11-17842-CA32, 11th Judicial

Circuit, in and for Dade County, FL (hereinafter "State Court Action").

Most egregiously, and immediately precipitating this lawsuit, KATZ attempted to obtain

a preliminary injunction against CHEVALDINA in the State Court Action - prohibiting her from

---

[1]  The Eleventh Circuit has adopted the "incorporation by reference" doctrine with respect to documents other than the pleadings on a Rule 12(b)(6) motion. Horsley 304 F.3d at 1134 (11th Cir. 2002); See Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999); Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012)

making speech that had not yet been adjudicated to be defamatory. KATZ's preliminary

injunction papers, filed 11 months after the suit, demanded that the entire blog be removed. This

includes the Photograph at issue in this case. See Amended Complaint, para. 7, D.E. 10.   At this

time, the State Court has refused to violate the First Amendment censor the blog, thus far

declining to grant KATZ's motion.[2]   After not getting immediate relief, and with his ego

inflamed, KATZ then obtained the rights to the image at issue in this case (the "Photograph") by

written assignment in May 2012. This lawsuit followed.

 This is the second time these parties have been in federal court over the blog. Early in the

State Court case, CHEVALDINA removed the case to federal court

(11-22657-Civ-COOKE/TURNOFF) but the Honorable Judge Cooke remanded the case.[3]

 Originally KATZ redacted the photographic image in the Complaint (D.E. 1) claiming

that it was "unflattering" (D.E. 1, para. 9), yet after CHEVALDINA's first Motion to Dismiss,

the Amended Complaint now shows this unflattering photo in all its glory. Irina CHEVALDINA

is an investigative blogger who maintains publicly available and free blogs at

<rkassociatesusa.blogspot.com> and <rkassociates-sunnyisles.blogspot.com>. CHEVALDINA

includes analysis of court filings, videos, news articles, and other information available about

KATZ and the practices of his business.

---

[2]  The State Court held a 2 hour hearing in May, 2012 and near the end, the Court gave KATZ an option: accept a ruling from the bench or continue the hearing to a later date (now set for February, 2013).   KATZ continued the hearing.

[3]  The original state court case alleged false advertising in violation of 15 U.S.C. § 1125(a)(Section 43(a) of the Lanham Act, the federal trademark act). In a clear attempt at forum shopping and in an effort to remain in state court, after removal KATZ immediately dropped the false advertising federal claim from the state court complaint and sought remand back to the state court. The Honorable Judge Cooke, granted the remand and the State Court Action continued. See 11-22657-Civ-COOKE, DE 60. In his second attempt at forum shopping, KATZ now seeks the help of the federal court, which he so badly wanted to initially avoid, under the guise of this copyright infringement claim over an unflattering Photograph.

Since the beginning, the blog has commented on KATZ and his business practices, engaging in criticism where necessary.    The overarching purpose of CHEVALDINA's blogging was to raise awareness of KATZ and his business practices.    To further that goal, her posts described, discussed and, where possible, even depicted KATZ's actions.    By taking these actions, CHEVALDINA was able to turn her blog into a focal point of scrutiny for KATZ's looming and controversial presence in the commercial real estate business.

Despite the satisfaction CHEVALDINA received from providing this valuable public service, there is one thing she never received for her efforts: money.    CHEVALDINA is not compensated for her authorship of her blog, and receives no advertising or other revenue for her writing.    CHEVALDINA has never received any revenue, monetarily or in-kind, from writing her blog.    Ultimately, CHEVALDINA's work has not and cannot be monetized in any way, and is a solely non-commercial endeavor.    The "commercial free" nature of the blog shown in Exhibit A and B, is apparent due to the lack of advertisements in the blogs, the absence of links to other commercial sites selling products or services or links to other referral sources.

II.   **Legal Standard**

When evaluating a Rule 12(b)(6) motion to dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283 (11th Cir. 2010). The Court must take all of the well-pled factual allegations as true. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007).    However, conclusory allegations, without supporting facts, are not entitled to this presumption of truth.    Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009). This Court has previously, and should in the instant case, dismissed cases with prejudice under 12(b)(6) motions. See Freeman v. Key Largo

Volunteer Fire & Rescue Dep't, Inc., 841 F. Supp. 2d 1274 (S.D. Fla. 2012); Lenbro Holding, Inc. v. Falic, 2012 U.S. Dist. LEXIS 26766 (S.D. Fla. 2012). As detailed below, there is no set of facts under which KATZ can prevail.    CHEVALDINA specifically seeks relief through this motion to dismiss by asserting the affirmative defense of fair use. As more fully explained below, the Court is able to dismiss this case based upon the raising of an affirmative defense.

## III.    Argument – Fair Use

Like Florida's District Courts, the Copyright Act also recognizes the First Amendment right to lawful speech.    In this case, that right is codified as fair use under 17 U.S.C. § 107. CHEVALDINA's use of the image for commentary and criticism of KATZ is a classic fair use. Even using KATZ's Photograph, CHEVALDINA's non-commercial use of it constitutes a fair use of the work.

For the purposes of the motion to dismiss, the Court must assume all non-conclusory facts presented in the Amended Complaint are true. With that understanding, the republication of copyrighted material does not automatically give rise to a claim for copyright infringement.    As a defense to copyright infringement claims, the fair use doctrine holds harmless those who use copyrighted material for purposes of education, commentary, or critique. 17 U.S.C. § 107; Campbell v. Acuff-Rose Music, 510 U.S. 569, 576-77 (1994); Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1238 (11th Cir. 2010); Mattel, Inc. v. Walking Mt. Prods., 353 F.3d 792, 799 (9th Cir. 2003); Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1399    (9th Cir. 1997); Righthaven v. Hoehn, 792 F. Supp. 2d 1138 (D. Nev. 2011); see also 4-13 Nimmer on Copyright § 13.05.

It is well understood that "copyright does not immunize a work from comment and criticism." Suntrust Bank v. Houghton Mifflin Co., 268 F.3d, 1257, 1265 (11th Cir. 2001). "An opportunity for a defendant to claim a fair use of copyrighted materials has long been thought necessary to fulfill the purpose of copyright, as it was outlined by the Constitution: '[t]o promote the Progress of Science and the useful Arts....'" Fuentes v. Mega Media Holdings, Inc., 2011 U.S. Dist. LEXIS 70996 (S.D. Fla. 2011)(citations omitted). As the 11th Circuit previously stated, "one of the most important purposes to consider is the free flow of ideas - particularly criticism and commentary." SunTrust 268 F.3d at 1268.

As the Southern District of Florida recently explained:

> The fair use doctrine "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." "The task is not to be simplified with bright-line rules," for the copyright statute, like the fair use doctrine it recognizes, calls for a case-by-case analysis. The fair use doctrine is an "equitable rule of reason." In assessing whether a use of copyright is a fair use under the statute, the Court bears in mind that the examples of possible fair uses given in the statute are illustrative rather than exclusive, and that "[a]ll four of the factors are to be explored, and the results weighed together, in light of the purposes of copyright."

Fuentes at 16-17 (citations omitted).

This Court is able to dismiss KATZ's case outright based upon CHEVALDINA's fair use of the Photograph. The 7th Circuit recently affirmed the dismissal, at the pleading stage, of copyright infringement cases premised on obvious fair use. See Brownmark 682 F.3d at 692. As the 11th Circuit has recently confirmed, fair use is a full defense to infringement. See Latimer, 601 F.3d at 1239. The Latimer case provides an interesting explanation:

> "[W]hile there may be evidence of copying, not all copying is legally actionable." Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1542 (11th Cir. 1996).The fair use doctrine is a statutory exception to copyright infringement, which seeks to balance First Amendment concerns with the protections otherwise afforded authors by the Copyright Act. The Supreme Court has described   fair use as "a privilege in

others than the owner of the copyright to use the copyrighted material in a
reasonable manner without his consent." Section 107 of the Copyright Act
specifically permits the unauthorized use of copyrighted work "for purposes such
as criticism, comment, news reporting, teaching (including multiple copies for
classroom use), scholarship, or research." 17 U.S.C. § 107. Thus,
defendant-appellees have not infringed Latimer's copyright if the use made of the
photographs is a fair use under 17 U.S.C. § 107.

Latimer at 1238 (some citations omitted).

When determining the fair use of copyrighted materials for purposes such as criticism,

comment, news reporting, teaching, scholarship or research, courts look to the following factors:

1) the purpose and character of the use, including whether such use is of a
commercial nature or is for nonprofit educational purposes;
2) the nature of the copyrighted work;
3) the amount and substantiality of the portion used in relation to the copyrighted
work as a whole; and
4) the effect of the use upon the potential market for or value of the copyrighted
work.

17 U.S.C. § 107; Campbell, 510 U.S. at 576-77; SunTrust, 268 F.3d at 1268; Fuentes, 2011 U.S.

Dist. LEXIS 70996 ; Brownmark, 682 F.3d at 692; Los Angeles News. Svc. v. CBS

Broadcasting, Inc., 305 F.3d 924, 938 (9th Cir. 2002).

No one factor in the fair use analysis is dispositive, and they must be weighed together.

Campbell, 510 U.S. at 577; SunTrust, 268 F.3d at 1268; Los Angeles News Svc., 149 F.3d at 993

; 4-13 Nimmer on Copyright § 13.05("[E]ven taken alone, each of the factors is defined in only

the most general terms, so that courts are left with almost complete discretion in determining

whether any given factor is present in any particular case").   These factors are non-exhaustive,

and this Court may look beyond them in ascertaining the Defendant's fair use of copyrighted

material. Campbell, 510 U.S. at 577; Harper & Row Publishers v. Nation Enters., 471 U.S. 539,

559 (1985).   Indeed, courts "avoid rigid application of the copyright statute when […] it would

stifle the very creativity that law is designed to foster." Stewart v. Abend, 495 U.S. 207, 236

(1990). It is important for the purpose and the character of the defendant's use to be educational,

or for purposes of criticism or comment. For instance,

> In assessing the components of the four factor test, the Court is mindful that, while § 107 does not accord the statutory factors any particular weight in relation to one another, the characterization of defendant's use as news related carries great weight in the analysis of fair use. The Second Circuit has spoken of the special importance of the first factor when a challenged use fits among the enumerated permissible purposes: "There is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in section 107. 'If a [work] falls into one of these categories (i.e., criticism, scholarship, or research), assessment of the first fair use factor should be at an end,' even though, as will often be the case, the [defendant] 'anticipates profits.'" Wright, 953 F.2d at 736-37 (citations omitted.) Because defendant's use of plaintiff's photos clearly falls within the permissible use category of "news reporting," the Court must lean decidedly in the direction of finding fair use even as it looks at the other three factors.

Mathieson v. Associated Press, 1992 U.S. Dist. LEXIS 9269, 15-16 (S.D.N.Y. June 24, 1992).

The Defendant's use of the Photograph falls within the scope of news reporting, comment and criticism, rendering it fair use under copyright law.   Each factor is analyzed individually below.

A. CHEVALDINA's Republication of the Photograph was for a Transformative Purpose and Possessed the Characteristics of a Critical and Non-Commercial Use.

**1. The Photograph's Republication Constitutes a Protectable Fair Use Interest.**

The manner in which CHEVALDINA used the Photograph leads to the inescapable

conclusion that it was posted not to compete with KATZ, but as an addition to the ongoing

reporting, discussion, commentary and criticism of KATZ and his business. (see Exhibit A,

pages 16, 71, 88, 98, 108, and 195 and Exhibit B page 3, blogs captured as of August 8, 2012).

In republishing the Photograph, CHEVALDINA sought to add to her ongoing commentary on

KATZ, using the Photograph itself - which depicts KATZ in an awkward and unflattering pose -

as part of the criticism in the blog posting.   As a matter of law, CHEVALDINA's republication

satisfies the four statutorily delineated purposes that are protected by the fair use doctrine: education, news reporting, comment and criticism. 17 U.S.C. § 107; Campbell, 510 U.S. at 576-77.

CHEVALDINA used the Photograph not only to provoke and further discussion, but to make the bizarre and absurd Photograph of KATZ a part of the discussion in and of itself. Even KATZ tried to hide the image from public by a redacted image from the Complaint, stating that it was unflattering. See DE 1, para. 9; see also Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 115 n.3 (2d Cir. 1998) (application of the fair use doctrine is particularly apropos where the use of the work disparages the original).

**2. Defendant's Use of the Photograph was Transformative in its Character.**

CHEVALDINA's republication of the Photograph was a transformative use of the work in order to educate the public while inviting commentary and discussion.   The quantity of work copied does not determine the character and purpose of its use. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1152-53 (9th Cir. 1986).   In another similar case, the First Circuit found that a posed photograph of a model that was originally intended to be a part of her portfolio which was later published in a news story about her participating in a beauty contest was "transformative". Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22-23 (1st Cir. 2000). The Nunez decision held that unaltered photos used in conjunction with editorial commentary gave the pictures "new meaning" sufficient to transform the photo into "newsworthy" use which was deemed to be fair use. Id.

The transformative nature of copyrighted material's use is determined by whether the use adds something new to the copyrighted work, altering the first with a new expression, meaning or message; the more transformative the work, the less will be the significance of other factors

potentially weighing against fair use. Campbell, 510 U.S. at 579; see also Fuentes, 2011 U.S. Dist. LEXIS 70996; see also 4-13 Nimmer on Copyright § 13.05(A)(1)(b).

The Ninth Circuit held that a search engine that reproduced the plaintiff's images during its image searches, was not liable for copyright infringement in making such copies when presenting image search results to end-users. Kelly v. Arriba Soft Corporation 336 F.3d 811 (9th Cir. 2003).   Specifically, the court held that its creation and ordering of images results or transforms the images into a new work - the search results requested by the user - that is intended to engage and inform the user, rather than merely reproduce the images. Arriba, 336 F.3d at 818.

Similarly, the Ninth Circuit later ruled that reproducing an exact copy of copyrighted work does not diminish a transformative use like Arriba's, using copyrighted works to present a user with information, so long as the copy serves a different function than the original work. Perfect 10, Inc. v. Amazon, Inc., 508 F.3d 1146, 1165 (9th Cir. 2007); See also Hoehn, 792 F. Supp. 2d at 1138; Hofheinz v. A&E Networks, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y. 2001). In yet another case, a court found fair use where defendants used the "photographs for a fundamentally different purpose than they were originally intended by transforming them into a vehicle for publicizing and criticizing [Plaintiff's] business practices." Sedgwick Claims Mgmt. Servs. v. Delsman, 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. 2009).

Based on the criteria for assessing a republication's transformative nature set forth in Campbell, Arriba, Perfect 10, Sedgwick, and Hustler Magazine, CHEVALDINA's use was transformative.   CHEVALDINA did not merely republish the work and let it stand on its own without comment or analysis, but converted it into part of a discussion she had been leading about KATZ for more than one year. The Photograph's original purpose was to depict KATZ.

CHEVALDINA's display of the Photograph, like that of <u>Arriba</u> and <u>Google</u>, was for a different purpose: CHEVALDINA converted the Photograph into a part of the discussion led on her blog – albeit in a minor role.

CHEVALDINA did not use the Photograph as a bare reproduction of KATZ's work - what the blog's viewers are actually viewing is CHEVALDINA's commentary and criticism of KATZ, which results in discussion among blog commenters.    This assemblage of content – from CHEVALDINA and commenters, in writing and in images – is the final product achieved through CHEVALDINA's use and transformation of the Photograph.    This use incorporates the existing work into a new work in the course of an online discussion, putting it into a new context and, under <u>Perfect 10</u>, transforming the Photograph's purpose and character. See <u>Perfect 10</u> 508 F.3d at 1165.    Because Defendant's use of the Photograph effectively transforms its purpose, there is no risk of CHEVALDINA's reproduction impermissibly superseding the original work. <u>Campbell,</u> 510 U.S. at 579.

## **3. Defendant's Alleged Infringement of the Photograph was a Noncommercial Purpose.**

CHEVALDINA did not republish the Photograph for any commercial purpose. In fact, the Amended Complaint hedges on the topic of compensation by alleging that CHEVALDINA used the image for a commercial purpose, tacitly acknowledging her non-commercial use of the Photograph. Per the Amended Complaint: "Upon information and belief, as a result of her conduct, CHEVALDINA has realized and continues to realize profits **or other benefits rightly belonging to KATZ.**" D.E. 10, p. 3, ¶16 (emphasis added). This purposely ambiguous and disingenuous assertion by KATZ, if taken as fact under a motion to dismiss standard, is designed to avoid any concrete finding by this Court. KATZ knows that the blog articles have no commercial purpose, since he deposed CHEVLADINA for over 14 hours in the State Court

Action and reviewed over 1,000 pages of documents from CHEVALDINA. The ambiguous "or" statement in the Amended Complaint is presented to be consistent with Fed.R.Civ.P. 11.   A detailed review of the entire blog reveals that there is not a single advertisement, nor a request for funds by the author nor an online facility for the transfer of funds to CHEVALDINA. The blog is posted online and has always been accessible to everyone for free.

The other portion of KATZ's assertion, "or other benefits rightly belonging to KATZ," certainly has no commercial purpose. "Other benefits" cannot rise to the level of commercial concern raised in the fair use analysis. Instead, noncommercial, nonprofit use of copyrighted material is presumptively fair use. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 448 (1984).   The legal inquiry as to whether CHEVALDINA's use was for non-commercial purposes is not limited to whether the sole motive of the Photograph's use was monetary gain, but considers whether the Defendant stands to profit from exploiting the copyrighted material without paying the traditional price for it. Harper & Row, 471 U.S. at 562; Hustler Magazine, 796 F.2d at 1152.   Under any metric, CHEVALDINA's use was non-commercial.

CHEVALDINA had no financial incentive to republish the Photograph. CHEVALDINA did not receive any financial benefit for posting the Photograph on her blog, as she did not receive any form of direct or indirect compensation from the Photograph's republication. "[A]n informational website, reproducing plaintiff's materials in order to criticize plaintiff's business practices and not set up for economic gain, has been held noncommercial." 4-13 Nimmer on Copyright § 13.05(A)(1)(c). As CHEVALDINA's profit motive (or lack thereof) is

the relevant inquiry in analyzing noncommercial use, this weighs heavily in favor of a finding of fair use.

Even assuming the Court accepted wholesale the first part of the allegation, namely that there were realized profits, the inquiry is not swayed or changed. Any monetary profit, which CHEVALDINA emphatically denies and has denied on the record under oath, still does not make this factor weigh in favor of KATZ. In fact, the court in Fuentes addressed the concern over commercial nature of a defendant's use of copyrighted material.

> However, many of the uses § 107 identifies as examples of fair use—including criticism, comment, and news reporting—"are generally conducted for profit in this country." Harper & Row, 471 U.S. at 592 (Brennan, J., dissenting). "To negate any argument favoring fair use based on news reporting or criticism because that reporting or criticism was published for profit is to render meaningless the congressional imprimatur placed on such issues." Id. The Supreme Court later adopted as its own Justice Brennan's point in Campbell, adding that "[n]o man but a blockhead ever wrote, except for money." 510 U.S. at 584 (quoting 3 Boswell's Life of Johnson 19 (G. Hill ed. 1934)).

Fuentes, 2011 U.S. Dist. LEXIS 70996.

As one court appropriately explained, "[e]ven assuming that the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use." Hustler Magazine, 796 F.2d at 1152-53. No matter how this concept it viewed, the fair use factor weighs in favor of CHEVALDINA.


**B. The Photograph is Not Creative, and Thus Prone to Fair Use.**

It is apparent by viewing the Photograph that this image is no artistic or highly choreographed photo of Raanan KATZ.   Rather than evoking a message or sentiment, the Photograph merely depicts KATZ in a candid state, conveying the bare facts of his appearance at a certain, fixed point in time.   Where copyrighted material is informative, rather than creative

(e.g., a work of fiction or fantasy), courts have widened the scope of fair use. <u>Harper & Row</u>, 471 U.S. at 563-64; <u>Hoehn</u>, 792 F. Supp. 2d at 1138.   Use of published works, like the Photograph, are more likely to qualify as fair use because the first appearance of the creator's expression has already occurred. <u>Arriba</u>, 336 F.3d at 820; <u>Hoehn</u>, 792 F. Supp. 2d at 1138.

In cases such as this, the nature of the work should determine the court's analysis, with the predominant factor weighing the court's decision as to whether the creation is informational or creative in nature. <u>Harper & Row</u>, 471 U.S. at 564; <u>CBS Broadcasting</u>, 305 F.3d at 940; <u>Hustler Magazine</u>, 796 F.2d at 1154.   Where informational elements predominate over creative ones, the work, even if mixed, is informational in nature and subject to a broader application of fair use. <u>Reuters</u>, 149 F.3d at 994; <u>Los Angeles News Svc. v. KCAL-TV Channel 9</u>, 108 F.3d 1119, 1122 (9th Cir. 1998); see also <u>Weissman v. Freeman</u>, 868 F.2d 1313, 1325 (2d Cir. 1989).

As an original work, there is no dispute that the Photograph inevitably contains some creative elements.   However, despite the fact that the Photograph contains creative elements, it is still well within the boundaries of non-infringing fair use. <u>CBS Broadcasting</u>, 305 F.3d at 940; <u>Reuters</u>, 149 F.3d at 994; <u>KCAL-TV</u>, 108 F.3d at 1122.   The Photograph, depicts plaintiff KATZ in a public setting - a depiction of items that make the picture what it is, as without being captured on film, there would be no Photograph. <u>CBS Broadcasting</u>, 305 F.3d at 940; <u>Reuters</u>, 149 F.3d at 994. (Doc. # 1 Exh. 3 at 4.)   This Photograph is predominantly factual, relaying information in the form of KATZ in a candid state.   Despite the Photograph's inherent creative elements, its content primarily is a presentation of factual data, without which the work would be almost devoid of content.   Even if interpreted as a mixed work of information and creativity, the Photograph's heavy informational emphasis of displaying KATZ in a candid setting supports it

being, on balance, a factual presentation predisposed to fair use.    As such, this factor weighs in favor of CHEVALDINA's fair use.

As one recent Southern District of Florida case explained, the exclusive ownership of a factual work such as this does not promote the Progress of the useful Arts. <u>Fuentes</u>, 2011 U.S. Dist. LEXIS 70996.

The First Circuit addressed this exact concept: "[P]ictures could be categorized as either factual or creative: certainly, photography is an art form that requires a significant amount of skill; however, the photographs were not artistic representations designed primarily to express Nunez's ideas, emotions, or feelings... Given the difficulty of characterizing the 'nature' of the photographs, we find that the impact of their creativity on the fair use finding is neutral." <u>Nunez</u>, 235 F.3d at 23.

As noted in the Amended Complaint, "The Image was photographed and first published in Israel on or about February 22, 2011...." (DE 10, p.2, ¶ 8). Under the incorporation by reference rules, CHEVALDINA attaches hereto, Exhibit C, which is a copy of a *Haaretz* news article published on February 22, 2011, about Raanan KATZ and his business activities. The caption of the photo states "U.S.-based mogul Raanan KATZ. Photo by Seffi Magriso." The copyright assignment to KATZ, according to Amended Complaint ¶7, is also attached hereto (Exhibit D) and is incorporated by reference into the Amended Complaint. The assignment purports to be from Seffi Magriso, the attributed photographer in the *Haaretz* article. Clearly the original purpose of the Photograph was factual and not creative. Therefore, any additional use by another news reporting entity cannot be viewed as other than factual.

## C. The Defendant's Republication of the Entire Photograph Does Not Preclude a Finding of Fair Use.

CHEVALDINA's use of the entire Photograph does not preclude a finding of fair use. The Supreme Court has held that the amount of permissible copying requires a case-by-case analysis varies with the purpose and character of the intended use. Campbell, 510 U.S. at 586-87. Numerous cases have held that full reproductions of copyrighted works constitute non-infringing fair uses. Hustler Magazine, 796 F.2d at 1155; Arriba, 336 F.3d at 821; Hoehn, 792 F. Supp. 2d at 1138. The Court "must look at the work appropriated, both qualitatively and quantitatively, in order to determine whether [Defendant's] use was 'reasonable in relation to the purpose of copying.'" Fuentes, 2011 U.S. Dist. LEXIS 70996 (quoting Campbell, 510 U.S. at 586 ).

The reuse of an entire image may be reasonable if it serves the defendant's intended purpose. Fuentes, 2011 U.S. Dist. LEXIS 70996; Perfect 10, 508 F.3d at 1165; Calkins v. Playboy Enters. Int'l, Inc., 561 F. Supp. 2d 1136, 1142-43 (E.D. Cal. 2008); Sedgwick, 2009 U.S. Dist. LEXIS 61825. In Hustler Magazine, Moral Majority's use of the entire advertisement created by Hustler was deemed to be a use of the entire work, yet was ultimately a fair use of Hustler's material under the court's analysis. Hustler Magazine 796 F.2d at 1155.   More recently, the Arriba court held that Arriba's complete copying of copyrighted images for depiction within search results was "reasonable," and "necessary" for pursuing its purpose in providing more information about the image to the end-user. Arriba 336 F.3d at 821.

The Ninth Circuit reaffirmed this reasoning. See Perfect 10, 508 F.3d at 1165.   The court held that Google's full copying of copyrighted images was fair use because Google's use of the images were for a purpose - presentation of search information to a user - different than the original works' purpose, which was for entertainment. Id.    In both Arriba, 336 F.3d at 821, and

18

Perfect 10, 508 F.3d at 1165, the defendant's use of the complete copyrighted images did not weigh against them in the court's fair use analysis. See also Hoehn, 792 F. Supp. 2d at 1138.

     This precedent is consistent with the Defendant's use of the Photograph herein as being a non-infringing fair use.   Even full reproduction of the works was deemed "reasonable" and "necessary" for Google and Arriba to achieve their transformational use of the images and provide information to end users, as the image search services' purpose of presenting and identifying images to its users would be defeated without showing the entire image. Perfect 10, 508 F.3d at 1165; Arriba, 336 F.3d at 821; see also Hoehn, 792 F. Supp. 2d at 1138.   Similar to those cases, CHEVALDINA's use of the Photograph was integral to creating a discussion about it, and incorporating the image into the discussion itself.

     CHEVALDINA's use of the entire Photograph does not weigh against a finding of fair use.   As discussed above, CHEVALDINA's use of the Photograph was for a non-commercial pedagogical and commentary-inducing purpose, and was transformative in nature, converting it into a documented conversation about the individual it depicted.   In order to effect the goal of creating a discussion with analysis of the Photograph - an online, multi-party critique of it - use of the Photograph was necessary, and the least amount of the Photograph that could be used to fulfill its purpose.

     As CHEVALDINA's republication of the Photograph did not supersede its original context, there was no risk of the original work's market being diverted to CHEVALDINA's blog, and thus no improper purpose for displaying the Photograph.   Indeed CHEVALDINA was not selling, monetizing, or distributing the Photograph for any commercial purpose – she was simply making it part of a broader discussion about KATZ.   The totality of circumstances established

above, and precedent within this Circuit, give rise to the conclusion that Defendant's republication of the Photograph was necessary to furthering socially beneficial discussion of it, and used only the least amount of the Photograph necessary to do so.   For that reason, this element of fair use analysis weighs in favor of the Defendant.


### D. CHEVALDINA's Use of the Photograph Could Not Have Had an Effect on its Potential Market, If One Even Existed.

Where a copyright is used without authorization for a noncommercial purpose the copyright holder must show by a preponderance of evidence that there is some meaningful likelihood of future harm. Harper & Row, 471 U.S. at 567; Sony, 464 U.S. at 451.   The most important factor in a fair use analysis under 17 U.S.C. § 107(4) is the use's effect on the potential market for the copyrighted work. Harper & Row, 471 U.S. at 566.   In determining whether the use has diminished the work's potential market, courts have focused on whether the infringement (1) tends to diminish or prejudice the work's potential sale; (2) tends to interfere with the work's marketability; or (3) fulfills the demand for the original work. See Hustler Magazine, 796 F.2d at 1155-56, citing Elsmere Music, Inc. v. Nat'l Broadcasting Co., 482 F. Supp. 741, 747 (S.D.N.Y. 1980); Wainwright Secy's v. Wall Street Transcript Corp., 558 F.2d 91, 96 (2d Cir. 1977); Meeropol v. Nizer, 560 F.2d 1061, 1070 (2d Cir. 1977).

CHEVALDINA's use of the Photograph has no affect on KATZ's market, which appears to be nothing more than acquiring the rights to the work at issue to bring this lawsuit. To negate any finding of fair use, KATZ must show that if the challenged use becomes widespread, it would adversely affect the potential market for the copyrighted work. Harper & Row, 471 U.S. at 568; Sony, 464 U.S. at 451.   In Sony, the Supreme Court found that the company's Betamax video recorder would not affect the aggregate market for copyrighted work, despite creating

copies of the work. 464 U.S. at 453 nn. 36-38. Consequently, the Supreme Court found this was a permissible fair use of copyrighted content. Id at 455.

CHEVALDINA's republication of the Photograph for reporting, commentary and criticism purposes does not, and cannot, affect the market for the copyrights KATZ holds. Based on KATZ's litigious behavior against CHEVALDINA for her lawful but unflattering exercise of her First Amendment rights, it appears that KATZ will not participate at all in the market for criticism of him.   As noted by the 11th Circuit:

> Other courts have echoed the principle that "'only traditional, reasonable, or likely to be developed markets'" ought to be considered when assessing the effect of a challenged use upon a potential market. "In the cases where we have found the fourth factor to favor a defendant, the defendant's work filled a market niche that the plaintiff simply had no interest in occupying."

SunTrust, 268 F.3d at 1282 (concurring opinion)(Citations omitted).

As the Campell court explained, "Yet the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market." 510 U.S. at 592. One cannot imagine a time when KATZ will embark on using the Photograph to criticize himself, when he finds it so unflattering. Thus, this market competition does not exist, and is **not alleged** in KATZ's Amended Complaint (D.E. 10). See Field v. Google, Inc., 412 F. Supp. 2d 1106, 1121 (D. Nev. 2006) (declining to presume a market exists for works that are offered for free, in their entirety); Hoehn, 792 F. Supp. 2d at 1138 (requiring a showing that the alleged infringement will affect the right-holders' market in order to find infringement).   Courts will not presume that a non-participant in a market for copyrighted work is harmed merely because it alleges infringement. eBay v. MercExchange, LLC, 547 U.S. 388 (2006); Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010)

(declining to presume market harm in copyright cases when a copyright owner is not participating within the market); <u>Hoehn</u>, 792 F. Supp. 2d at 1138

      The relevant market is not the market entered by the Photograph's original creator, but of KATZ, who acquired the image solely to engage in this litigation. Thus the present cause of action by KATZ is based only upon events beginning on the date of the assignment, namely no earlier than May 29, 2012.   The assignment of the copyright, incorporated by reference by being noted in the Amended Complaint, fails to assign the right to sue for past infringement.[4] See <u>Horsley</u>, 304 F.3d at 1134 (discussing incorporation by reference).

      Even if KATZ were to sell or license the image like the original creator/copyright owner - and not merely use it for this abusive litigation - there are dissimilarities between the original owner's use and CHEVALDINA's use of the image.   CHEVALDINA used the whole image to stimulate and participate in criticism of KATZ.   She did so without any commercial incentive or reason to do so.   Her republication of the Photograph generated discussion and educated others in a manner so substantially different from the copyright holder's purpose in creating the Photograph - merely to identify KATZ - that there is no likelihood of competition between them, as seen in <u>Perfect 10</u>, 508 F.3d at 1146, and <u>Arriba</u>, 336 F.3d at 811, and <u>Hoehn</u>, 792 F. Supp. 2d at 1138.

---

[4] There has been a long held proposition that the copyright assignment must explicitly identify a conveyance of a right to pursue past infringement. "There is nothing in this instrument which gives to the plaintiff or any of his co-authors the right to sue for past infringements. The words 'right, title and interest' in an assignment have been construed by the courts not to carry with it the right to sue for past trespass or infringement.'" <u>Prather v. Neva Paperbacks, Inc.</u>, 410 F.2d 698 (5th Cir.1969); see also <u>Lorentz v. Sunshine Health Prods.</u>, 2010 U.S. Dist. LEXIS 101019 (S.D. Fla. 2010); <u>DeSilva Const. Corp. v. Herrald</u>, 213 F.Supp. 184 (MD Fla. 1962); <u>Infodek, Inc. v. Meredith-Webb Printing Co., Inc.</u>, 830 F.Supp. 614 (N.D. GA 1993); see also 3-12 Nimmer on Copyright § 12.02(C).

Like <u>Arriba</u>, <u>Google</u> and <u>Hoehn</u>, CHEVALDINA did not sell licenses of the Photograph, nor the Photograph itself.   Bearing further similarity to this trifecta of cases, CHEVALDINA's use of the Photograph was not in the same market as the copyright holder.   In particular, Google and Arriba's relevant market, even when displaying wholly copied works, is the web search and specifically web image search markets, where they compete on the quality, depth and speed of results they can provide to end-users.

In turn, CHEVALDINA's relevant market is not the identification of KATZ, but the market of discussion and criticism itself, and specifically criticism of KATZ.   The Photograph was transformed from an identification tool to a component of a discussion once it was republished on CHAVALDINA's blog. If CHEVALDINA competes with anyone, it is with other critics of KATZ, as its relevant market is not for the information contained within the Photograph, but resulting discussion and analysis from its posters - of which the Photograph is an integral part.   This market for discussion is discrete from the market for the original copyrighted work.

If conduct analogous to CHEVALDINA's were to become widespread, as prohibited in <u>Harper & Row</u>, it would not affect the Photograph's original market anyway.   Readers of CHEVALDINA's blog are not interested in the Photograph for its own, original sake, but rather the discussion and expression it fosters among other commenters and from CHEVALDINA herself.   Consequently, the republication of copyrighted works for criticism and comment (if it is to be considered to be a market at all) constitutes a separate market, where consumers seek the discussion and criticism itself.   Widespread conduct of that nature would not impede the market for people who would view the Photograph for its original expressive, information-relaying

purpose.   The asymmetries between KATZ's purposes in using the image - assuming such purposes exist beyond this lawsuit - and CHEVALDINA's, are so pronouncedly different that they effectively preclude the parties from competing with one another.   KATZ cannot demonstrate that a meaningful likelihood of future harm exists, as required in <u>Sony</u>, if people are allowed to engage in this criticism of copyrighted works, which has a separate purpose and market from KATZ's market for the Photograph - the lawsuit market.


## IV. Conclusion

For the reasons stated herein, CHEVALDINA seeks that this Court dismiss Plaintiff's Amended Complaint **<u>with prejudice</u>**.   In the event that the Court believes that matters outside the pleading are needed to dispose of this case at this early stage, CHEVALDINA requests that the Court consider converting the present motion to a Rule 12(d) summary judgment motion. Fed.R.Civ.P. 12(d).


Dated: <u>August 10, 2012      </u>            Respectfully submitted,

By: <u>s/ Robert Kain                 </u>
   Robert C. Kain, Jr. (Fla. Bar No. 266760)
   rkain@complexip.com
   Darren Spielman (Fla. Bar No. 010868)
   Dspielman@complexip.com
   Kain & Associates, Attorneys at Law, P.A.
   900 Southeast Third Avenue, Suite 205
   Ft. Lauderdale, Florida 33316-1153
   Telephone:     (954) 768-9002
   Facsimile:      (954) 768-0158
   Attorneys for Defendant CHEVALDINA

   Marc J. Randazza (625566)
   Randazza Legal Group

6525 West Warm Springs Rd. Ste. 100
Las Vegas, Nevada 89118
Phone: (888) 667-1113
Fax: (305) 437-7662
mjr@randazza.com
Co-counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on __August 10, 2012_____, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Alan Kluger, Esq.
Todd Levine, Esq.
Lindsay Haber, Esq.
Kluger, Kaplan, et al.
Miami Center, 17th Floor
201 S. Biscayne Blvd., Suite 1700
Miami, FL 33131
305-379-9000
fax 305-379-3428

Michael Chesal, Esq.
Peretz, Chesal & Herrmann, P.L.
201 S. Biscayne Blvd., Suite 1750
Miami, FL    33131
T. 305-341-3000
F. 305-371-6807


/RobertKain/
Robert C. Kain, Jr.
Florida Bar No. 266760

25