IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:12-cv-22211-JLK

RAANAN KATZ,

     Plaintiff,

v.

IRINA CHEVALDINA,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION TO DISMISS

Plaintiff, Raanan Katz ("KATZ"), by and through undersigned counsel and pursuant to S.D. Fla. L.R. 7.1, hereby responds to Defendant, Irina Chevaldina's ("CHEVALDINA" or "Defendant") Second Motion to Dismiss the Amended Complaint ("Second Motion to Dismiss") (D.E. 14).

### I.    Introduction

This is a cut and dry case of copyright infringement.  As CHEVALDINA's own exhibits make clear, she has reproduced and displayed the photograph at issue on multiple web pages, using the photograph for its entertainment value – not for any purpose recognized as "fair use" under the Copyright Act.  Copyright law and the fair use doctrine not only frown on her activity, they flat out prohibit it.  But the issue now before the Court is not whether CHEVALDINA's fair use defense will shield her from liability, the question is simply whether the Amended Complaint states a cause of action for copyright infringement (which is not even disputed in the motion).  Try as she might to be summarily absolved of liability, CHEVALDINA's "fair use" defense is not ripe for consideration on a Rule 12(b)(6) motion. See, e.g., Microsoft Corp. v. Cietdirect.com

LLC, 08-60668-CIV, 2008 WL 3162535, at *3 (S.D. Fla. Aug. 5, 2008) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses."). For this reason alone, CHEVALDINA's Second Motion to Dismiss should be denied.

But even if the Court were to examine the fair use factors under the Copyright Act, it is clear that CHEVALDINA's use is not a "fair use" as a matter of law. At the very least, there is a question of fact as to whether such use is a "fair use" under the Copyright Act. Either way, the instant motion should be denied.

## II.   Relevant Factual Background

Only two facts from the Amended Complaint (D.E. 10) are relevant to CHEVALDINA's 12(b)(6) motion: (1) KATZ is the copyright owner of the subject photograph (Amended Complaint, ¶7); and (2) CHEVALDINA has copied and displayed unauthorized copies of the photograph on at least two websites that she controls (Amended Complaint ¶¶9, 14).

While CHEVALDINA attempts to recast this case into one of "reporting" censorship, the only "casting" that matters at this stage of the proceedings is the one made in the Amended Complaint. As alleged, this is simply a case about the unauthorized reproduction of one photograph. That's it. The parties' ongoing state court action (about which CHEVALDINA devotes most of her introduction) has not been plead in the Amended Complaint and is not relevant to these proceedings. Likewise, the excerpts from the websites that CHEVALDINA has introduced are not properly before the court for consideration on this motion to dismiss. CHEVALDINA relies on them under the guise of the "incorporation by reference" doctrine, but as CHEVALDINA's own authorities make clear, this doctrine only allows a court to consider "documents" attached to a motion to dismiss if the "document" is "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Putting

aside the issue of whether CHEVALDINA's websites constitute "documents" for purposes of this rule, KATZ does not concede that CHEVALDINA's attachments constitute the universe of her use of the subject photograph, or that they accurately and fully portray the manner in which the photograph has been used.   Those issues can only be resolved following full and fair discovery on the issue.

Ironically, there is a benefit from CHEVALDINA's improper introduction of the excerpts from some of her websites: she has unwittingly provided the Court with a glimpse into her world of fantasy, where she obsesses over KATZ's life and business.   It also enables the Court to observe that while CHEVALDINA styles herself an "investigative blogger" (see Second Motion to Dismiss, at 5), her website reveals a woman who is simply on a crusade to tarnish KATZ's image and reputation.

**III.   Legal Standard**

As CHEVALDINA readily acknowledges, the Court must take all of KATZ's well-plead factual allegations as true and evaluate all inferences derived from those facts in the light most favorable to KATZ.   See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Foreign Imported Productions & Pub., Inc. v. Grupo Indus. Hotelero, S.A., et al., 07-22066-CIV, 2008 WL 4724495, at *3 (S.D. Fla. Oct. 24, 2008).   CHEVALDINA nevertheless seems to ignore this standard and argues that the Complaint should be dismissed based on her anticipated "affirmative defense of fair use."   See Second Motion to Dismiss, at 7.   In fact, she does not even argue (nor could she) that KATZ failed to properly allege copyright infringement.   Dismissal on the basis of CHEVALDINA's anticipated "fair use" defense would fly in the face of this Court's settled principle that Rule 12(b)(6) is an inappropriate way to invoke defenses since "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that

omission." Microsoft Corp. v. Cietdirect.com LLC, 08-60668-CIV, 2008 WL 3162535, at *3 (S.D. Fla. Aug. 5, 2008) (internal quotation marks and citation omitted); see also Four Navy Seals v. Associated Press, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (affirmative defense of fair use "is inappropriate for determination on a 12(b)(6) motion, since fair use is an affirmative defense to an infringement claim").

As this Court explained in Microsoft: "Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses. . . .  Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." Microsoft, 2008 WL 3162535, at *3 (internal quotation marks and citation omitted).  Under no reading of the Amended Complaint can KATZ be said to have "admit[ted] all the ingredients" of CHEVALDINA's anticipated fair use defense. Moreover, as many courts have noted, "[f]air use is a mixed question of law and fact. . . . Evaluation of the statutory fair use factors in a particular case is obviously a fact specific inquiry for which summary judgment is ill-suited."  See, e.g., Association of Am. Med. Colleges v. Cuomo, 928 F.2d 519, 524 (2nd Cir. 1991).  Thus, if the fair use defense is generally ill-suited for resolution on summary judgment, it is clearly inappropriate for resolution on a motion to dismiss, particularly where, as here, the entire nature and extent of CHEVALDINA's use of the subject photograph is not even properly before the Court.  In sum, since Rule 12(b)(6) is an inappropriate procedural vehicle to test CHEVALDINA's fair use defense, the instant motion should be denied.

CHEVALDINA places primary reliance on Freeman v. Key Largo Volunteer Fire and Rescue Department, Inc., 841 F.Supp.2d 1274 (S.D. Fla. 2012) and Lenbro Holding, Inc. v. Falic, 2012 WL 695898 (S.D. Fla. 2012) for the proposition that the instant action should be

dismissed with prejudice.  Such reliance is not only improper, it is misleading.  In both of these cases, the complaints were dismissed with prejudice after the court had previously entered orders of dismissal and the plaintiff's were unable to cure pleading deficiencies that appeared on the face of the respective complaints.  In <u>Freeman</u>, a Fair Labor Standards Act ("FLSA") case, the complaint was dismissed with prejudice because the plaintiff's own allegations demonstrated that he was not an "employee" within the meaning of the FLSA – a critical element of his FLSA claims.  As the court explained, "it is clear that Plaintiff's claims cannot surpass the hurdle posed by the clear lack of an employment relationship between Plaintiff and Defendants."  841 F. Supp.2d at 1279.  Likewise, in <u>Lenbro</u>, an action on a guaranty, the complaint was dismissed with prejudice because on the face of the complaint, the guaranty did not satisfy the statute of frauds.  In both cases, the court was not asked to look beyond the allegations of the complaints in dismissing the cases.  Here, CHEVALDINA is asking the court to consider 215 pages of ancillary material attached to her motion that, as argued above, is not even properly before the Court.  Thus, <u>Freeman</u> and <u>Lenbro</u> do not even remotely support CHEVALDINA's position that the Amended Complaint should be dismissed, let alone with prejudice.

## IV.    Memorandum

For all of the reasons explained above, CHEVALDINA's Second Motion to Dismiss should be summarily denied without even addressing the elements of CHEVALDINA's anticipated fair use defense.  But even if the Court were to consider this defense, it is clear that the motion should nevertheless be denied.

As noted above, fair use is a mixed question of law and fact. <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 560, 105 S. Ct. 2218, 2230, 85 L. Ed. 2d 588 (1985). While the Court could rule as a matter of law that CHEVALDINA's use of the subject

photograph is *not* a fair use, <u>see</u>, <u>e.g.</u>, <u>Ivory v. Holme</u>, 8:07-CV-2354-T-TBM, 2009 WL 513720 (M.D. Fla. Feb. 27, 2009), "[b]ecause the fair use question is so highly dependent on the particular facts of each case, courts . . . have usually found it appropriate to allow the issue to proceed to trial." <u>Id</u>. at *7 (quoting <u>Maxtone–Graham v. Burchaell</u>, 803 F.2d 1253, 1258 (2d Cir.1986)).  Dismissal at this stage of the proceedings would thus be highly improper.

While CHEVALDINA correctly identifies the statutory "fair use" factors, her conclusory assertion that the fair use doctrine protects use of all copyrighted material as long as it is used in connection with education, commentary or critique is simply wrong.  <u>See</u> Second Motion to Dismiss, at 7.  Indeed, the Supreme Court has made it clear that just because a use is enumerated within the preamble of 17 U.S.C. § 107, it is not presumptively fair. <u>See</u> <u>Harper & Row Publishers</u>, 471 U.S. at 561 ("The drafters resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis.").  Likewise, and contrary to CHEVALDINA's suggestion, there is no per se "newsworthiness" exception to the fair use doctrine (even if her web pages would be considered "newsworthy").  Indeed, the Supreme Court has explained, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." <u>Harper & Row</u>, 471 U.S. at 557.  "News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts." <u>Murphy v. Millennium Radio Group LLC</u>, 650 F.3d 295, 307 (3d Cir. 2011).  This rule is particularly applicable here, where CHEVALDINA – the defendant in this case – after this case was filed reproduced the very photograph she is accused of infringing, calling the alleged infringement news! <u>See</u> Second Motion to Dismiss, Exhibit A, at 16 (showing the photograph was posted on July 20, 2012).  It

would be quite an anomaly if a defendant accused of copyright infringement would be entitled to republish the copyrighted material with immunity claiming that as a result of the alleged infringement, the copyrighted work was now newsworthy, and thus subject to protection under the fair use doctrine.  This would be an absurd result.

A.      **Purpose and Character of Use**

The first element courts consider in analyzing "fair use" is the purpose and character of the defendant's use of the copyrighted work.  This analysis involves looking at:  (1) whether the use is commercial or nonprofit educational; and (2) whether the use is transformative. 17 U.S.C. § 107.

CHEVALDINA's Commercial Use of the Photograph

The main question courts address in evaluating whether a work is commercial "is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, 471 U.S. 539, 562.  While CHEVALDINA argues that her use of the subject photograph is noncommercial (see Second Motion to Dismiss, at 13-14), under the Harper & Row definition, her own exhibits belie this position.  Indeed, in at least one instance, CHEVALDINA is clearly exploiting the subject photograph with no compensation to KATZ to promote her own personal venture.  Specifically, on a blog entitled "Why RK Centers Was the Wrong Choice" (Second Motion to Dismiss, Exhibit A, at 88) (D.E. 14-1), right above the unauthorized reproduction of the subject photograph, CHEVALDINA states: "I am in the process of writing a book 'Why RK Centers Was the Wrong Choice.'"  On this record, the Court can only assume that CHEVALDINA does, in fact, stand to profit in some way from the use of KATZ's photograph to promote her book.  Otherwise, why would she use it?

In any event, CHEVALDINA's unsupported factual assertion that her websites "cannot be monetized in any way, and [are] solely non-commercial endeavor[s]" (Second Motion to Dismiss, at 6) clearly raises a factual issue and is beyond the realm of a motion to dismiss. Microsoft Corp. v. Cietdirect.com LLC, 08-60668-CIV, 2008 WL 3162535, at *2 (S.D. Fla. Aug. 5, 2008) (On a 12(b)(6) motion "the scope of [the Court's] review is limited to the four corners of the complaint.").  In fact, the evidence in this case may very well demonstrate that CHEVALDINA's websites can be monetized in any number of ways, including, *inter alia*, by using the content on the websites (e.g., the photograph) as a vehicle for promoting the sale of her book.  CHEVALDINA's assumption that her websites are somehow static and fixed with the inability to start new and/or additional monetization campaigns at any moment is simply incorrect.

Additionally, by reproducing the photograph for its apparent entertainment value and using it to draw in visitors and increase the notoriety of her websites, as well as increase her Google (and other search engine) page rank,[1] CHEVALDINA may very well stand to profit from exploiting the copyrighted material without paying for it.  See Harper & Row, 471 U.S. at 562. With some discovery, KATZ may obviously be in a better position to evaluate all of the relevant facts necessary to determine the commercial nature of CHEVALDINA's use of the photograph, including to promote her book.

CHEVALDINA's other argument on commerciality is hardly persuasive.  In fact, relying on Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 449 (1984), CHEVALDINA erroneously argues that "noncommercial, nonprofit use of copyrighted material

---

[1] A website's page rank is linked to how high that page is displayed in search engine search results for certain keywords. See Google PageRank, http://support.google.com/toolbar/bin/answer.py?hl=en&answer=79837 (last visited Sept. 5, 2012).

is *presumptively* fair use." <u>See</u> Second Motion to Dismiss, at 14 (emphasis added).  To the contrary, in 1994, the Supreme Court revisited this very issue in <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 584-85 (1994), concluding that this presumption does not exist. <u>Id</u>. at 584 ("*Sony* itself called for no hard evidentiary presumption.").

In sum, viewing the foregoing in the light most favorable to KATZ, one can only conclude that CHEVALDINA has used the subject photograph in a commercial manner, and that this factor weighs against a finding of fair use.

<u>CHEVALDINA'S Use is Not a "Transformative" Use</u>

The second inquiry under the fair use analysis is whether the so-called "new" work merely "supersedes the objects" of the original work, or is "transformative," altering the original with new meaning or expression. <u>Campbell</u>, 510 U.S. at 579.  Transformative works generally further the goal of copyright, promoting science and the arts. <u>Id</u>.  The more transformative a new work, the less important the other factors become. <u>Id</u>.  Here, because there is nothing transformative in the way CHEVALDINA has used the subject photograph, this factor also weighs against a finding of fair use.

CHEVALDINA claims her use of the subject photograph is transformative because she used it in association with her so-called commentary about KATZ and his business.  <u>See</u> Second Motion to Dismiss, at 11.  The problem with this argument is that the photograph has nothing to do with CHEVALDINA's comments.  Thus, it fails for the same reason that reproducing Andy Warhol's "Double Elvis" painting in connection with commentary about Elvis' business ventures, but not commenting on any aspect of the painting would not qualify as a transformative fair use — there is no transformation and no need for the use.  Just because an individual is portrayed in a photograph does not give others the right to reproduce that photograph, under the

guise of a "transformative" fair use, in connection with information unrelated to that photograph. CHEVALDINA adds nothing new to the photograph, nor does she alter it with any new expression, meaning, or message; her use is clearly *non*-transformative. See <u>Monge v. Maya Magazines, Inc.</u>, 10-56710, 2012 WL 3290014 (9th Cir. Aug. 14, 2012).

In <u>Monge</u>, the Ninth Circuit recently explained that reproduction of a photograph in association with a story involving the subject of the photograph does not result in a protectable, sufficiently transformative use: "Under copyright law, [defendant] possesses an unfettered right to use any factual information revealed [through the photos] for the purpose of enlightening its audience, but *it can claim no need to bodily appropriate [plaintiffs'] expression of that information by utilizing portions of the actual [photos]*." <u>Id</u>. at *8 (internal citations and quotation marks omitted) (emphasis added).  In that case, the defendant published copyrighted pictures of the celebrity plaintiffs' clandestine wedding. <u>Id</u>. at *1, *5.  The defendant published the photographs for the purpose of exposing the wedding. <u>Id</u>. at *8.  In rejecting the defendant's fair use defense, the court held that the defendant's reproduction of the photos for a purpose different from which the photos were taken "does not necessarily create new aesthetics or a new work that 'alter[s] the first [work] with new expression, meaning or message.'" <u>Id</u>.  "[N]either minor cropping nor the inclusion of headlines or captions transformed the copyrighted works" and the inclusion of written commentary was "at best minimally transformative." <u>Id</u>. at *7, *9. Use of the pictures was simply not necessary to accompany the story:

> The photos were not even necessary to prove that controverted fact—the marriage certificate, which is a matter of public record, may have sufficed to inform the public that the couple kept their marriage a secret for two years. Indeed, [t]he public interest in the free flow of information is assured by the law's refusal to recognize a valid copyright in facts.

<u>Id</u>. at *8 (internal citations and quotation marks omitted).

Here, CHEVALDINA's use of the KATZ photograph is even *less* transformative than the use described in Monge.  There, at least the photo depicted a newsworthy event, and the commentary was about the event depicted in the photo.  Here, CHEVALDINA does not comment on or reference any newsworthy aspect of the photograph itself in any of the seven instances in which it is displayed (see Second Motion to Dismiss, Exhibit A, at 16, 71, 88, 98, 108, 195 and Exhibit B (D.E. 14-2), at 3) — likely because the photograph is not inherently newsworthy.  (As noted above, commenting on the photograph or the subject of the instant lawsuit should not be considered a "newsworthy" use since CHEVALDINA herself is the one accused of infringement.)  As in Monge, CHEVALDINA has no need to display the photograph to spew her venom about KATZ.  In fact, CHEVALDINA's reproduction of the subject photograph clearly exceeds what would be necessary to further her alleged purpose of providing information about KATZ and his business. See Los Angeles Times v. Free Republic, CV 98-7840 MMM(AJWX), 2000 WL 565200, at *9 (C.D. Cal. Apr. 4, 2000) (discussing purpose and character of the use and stating,"[t]he focus of the inquiry [is] whether [the] copying is necessary to defendants' critical purpose").  CHEVALDINA displays exact copies of the photograph, leaving its character unchanged.  Removing the photograph from CHEVALDINA's web pages would take nothing away from the information provided on each of those pages because the content on the pages has no critical or necessary relationship to the photograph. See Los Angeles Times, 2000 WL 565200, at *8 ("[E]ven where copying serves the 'criticism, comment and news reporting' purposes highlighted in § 107, its extent cannot exceed what is necessary to the purpose.").  Obviously, CHEVALDINA's copying has been done for its entertainment value, livening up with pictures what would otherwise be bland text. See 4 Patry on Copyright § 10:74 ("[U]se of photographs or other copyrighted works in a newspaper merely for their entertainment

value has an extremely weak fair use claim. . . ." ).  For this reason too, this factor weighs against a finding of fair use.

CHEVALDINA's reliance on Nunez v. Caribbean Int'l News Corp., 235 F.3d 18 (1st Cir. 2000) to suggest that her use has been transformative is misplaced.  That case involved a public controversy surrounding whether nearly naked pictures of the winner of the Miss Puerto Rico Universe competition were pornographic in nature and unsuitable pictures for the winner of such a contest to appear in.  Id. at 21.  The defendant in Nunez—a legitimate news agency, reproduced three of the images with commentary about the controversy which was the subject of the *content of the images themselves*. Id. (emphasis added).  The facts of that case are clearly distinguishable from this case in that here, CHEVALDINA does not comment on or criticize the photograph — or the event depicted in the photograph.  In Nunez, "the pictures were the story" and "[i]t would have been much more difficult to explain the controversy without reproducing the photographs."  Id. at 22.  Here, the KATZ photograph is not "the story" on any of CHEVALDINA's web pages and its display is unnecessary to explain the content on any page.

Likewise, CHEVALDINA's reliance on Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) for the same proposition is also misplaced.[2]  Perfect 10 involved Google's use of images in connection with its "Google Image Search" service, a search engine for locating images. Perfect 10, 508 F.3d at 1165.  The court found such use to be transformative because "a search engine transforms the image into a pointer directing a user to a source of information" and "provides social benefit by incorporating an original work into a new work, namely, an electronic reference tool." Id.  Unlike Google's necessary and transformative use of the images to allow its search engine to work, CHEVALDINA's reproduction of the photograph at issue is

---

[2] Perfect 10 and Kelly v. Arriba Soft Corp., 336 F.3d 811, 820 (9th Cir. 2003), also relied upon by CHEVALDINA, are factually and analytically similar, and are equally inapposite.

completely unnecessary to give usefulness to her web pages and involves no transformation whatsoever, just wholesale copying.

Further, "a finding that the alleged [infringer] copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no fair use." Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1118 (9th Cir. 2000). That is exactly what happened here. The photographer captured a candid image of KATZ at an Israeli basketball game to obviously show him in a photographically defenseless state, and licensed the image for use in connection with an article discussing his business ventures. Likewise, CHEVALDINA reproduced the same photograph on web pages commenting on KATZ's business. Thus, this factor clearly weighs against fair use.

### B. Nature of Copyrighted Work

The next element courts consider in evaluating fair use is the nature of the copyrighted work. This factor essentially examines how creative the work is. In general, the level of creativity in photographs is determined by the creative control over the photographer's exposure of the film, shutter speed, flash settings, lens choice, focus, zoom, angle, etc. See Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include . . . lighting, angle, selection of film and camera . . . and almost any other variant involved."). "[A] photo does not have to rise to the level of fine art or abstraction to avoid being classified as a predominantly informational work." Psihoyos v. Nat'l Exam'r, 97 CIV. 7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998). There can be no debating that the instant photograph contains these elements of creativity.

In fact, CHEVALDINA even acknowledges that the photograph at issue inherently contains creative elements. See Second Motion to Dismiss, at 16. But she then erroneously

argues that it is "predominantly factual, relaying information in the form of KATZ in a candid state." See id. But the very creativity of the photographer — in capturing a candid image of KATZ, at a certain angle, apparently oblivious to the photographer, attending a sporting event — is exactly what CHEVALDINA is now exploiting with her unauthorized reproduction. The only thing arguably informational about the photograph is that KATZ attended the event depicted in the photograph. Nothing else about the photograph is informational, and CHEVALDINA does not use it for the information it contains. CHEVALDINA is taking full advantage of the photograph's creativity — the very thing that fair use law abhors, or at least over which a jury question may be raised. See generally Balsley v. LFP, Inc., 11-3445, 2012 WL 3517571 (6th Cir. Aug. 16, 2012) (candid photograph possessed mixed nature of fact and creativity, raising jury question as to its fair use).

Lastly, CHEVALDINA argues, without any citation of authority, that since the photograph was previously published in Israel in connection with a story about KATZ, the photograph can only be viewed as factual. See Second Motion to Dismiss, at 17. Nor is CHEVALDINA's suggestion that use of published works in general are more likely to qualify as fair use. See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory, 11-1262, 2012 WL 3125120 (1st Cir. Aug. 2, 2012) (recognizing that prior publication of a work does not weigh in favor of fair use but merely avoids the work falling into the "private work" category for which fair use is especially unsuited). In sum, this factor weighs against CHEVALDINA as well.

### C.   **Amount and Substantiality**

The third factor of the fair use analysis involves a qualitative and quantitative analysis, looking at how much was copied in relation to the whole, and the significance of the copied portion. Harper & Row, 471 U.S. at 583 n.6; Campbell, 510 U.S. at 586. As part of the

qualitative analysis, a court may determine whether the heart of a work was copied. See Harper & Row, 471 U.S. at 564-65 (finding 300 words copied from a book to represent the heart of the book). What is reasonable can vary with the purpose and character of the use, as this factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . [is] reasonable in relation to the purpose of the copying." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1167 (9th Cir. 2007) (quoting Campbell, 510 U.S. at 586).

Because CHEVALDINA copied the entire photograph, this "militates against a finding of fair use." See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001) ("While 'wholesale copying does not preclude fair use per se,' copying an entire work 'militates against a finding of fair use.'") (internal quotation marks omitted). Also, as one commentator has noted, "there is an inherent relationship between the amount copied and the amount of criticism or comment," assuming there is comment or criticism of the work itself. See 4 Patry on Copyright § 10:61. CHEVALDINA copied the entire photograph, displayed it on at least seven different web pages covering two separate websites, and engaged in no comment or criticism of the photograph itself. See Second Motion to Dismiss, Exhibit A, at 16, 71, 88, 98, 108, 195 and Exhibit B, at 3. Her lack of comment or criticism of the photograph clearly weighs against fair use.

Further, because the extent of permissible copying varies with the purpose and character of the use, and CHEVALDINA's displays of the photograph were entirely unnecessary to convey the unrelated information accompanying each display, any amount of use was excessive in relation to her purpose. See Perfect 10, 508 F.3d at 1167; Monge, 10-56710, 2012 WL 3290014 (9th Cir. Aug. 14, 2012). The Ninth Circuit in Monge[3] demonstrated how this factor circles back to the first factor (purpose and character). Because use of the photos in Monge were

---

[3] The facts of this case are explained in more detail in section IV.A.

not needed to corroborate defendant's article exposing the couples clandestine wedding, an amount far more than necessary was used and this factor weighed against fair use:

> While we do not discredit [defendant's] legitimate role as a news gatherer, its reporting purpose could have been served through publication of the couple's marriage certificate or other sources rather than copyrighted photos. Even absent official documentation, one clear portrait depicting the newly married couple in wedding garb with the priest would certainly have sufficed to verify the clandestine wedding. [Defendant] used far more than was necessary to corroborate its story—all three wedding images and three post-wedding photos. Thus, analyzing both the quantitative and qualitative aspects of the published material, this factor weighs against fair use.

Id. at *11.  Likewise, the amount and substantiality of CHEVALDINA's numerous displays were and are clearly excessive, especially given the non-transformative nature of each display.

### D.    CHEVALDINA's Effect on Market

The fourth factor considers the effect of the use upon the potential market for the work and the effect of the use upon the value of the work. 17 U.S.C. § 107.  The value of the work extends beyond monetary rewards, as compensation takes various forms. See Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1119 (9th Cir. 2000).  Further, a presumption of market harm may be inferred when use of a work amounts to mere duplication for commercial purposes. See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 591, 114 S. Ct. 1164, 1177, 127 L. Ed. 2d 500 (1994).

Contrary to CHEVALDINA's assertion that this factor is the most important fair use factor, the Supreme Court in Campbell abandoned the idea that any factor enjoys primacy, holding that "[a]ll [four statutory factors] are to be explored and weighed together, in light of purposes of copyright." Campbell, 510 U.S. at 578; accord Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 926 (2d Cir. 1994).

As CHEVALDINA acknowledges, the subject photograph was taken by a photographer named Seffi Magriso, whose name appears with the photograph where it was first published in the Israeli publication Haaretz.  See Second Motion to Dismiss, Exhibit C (D.E. 14-3).  No doubt Magriso earns a living by using creative techniques to capture perfectly timed and visually impactful photographs of individuals and events to thereafter sell or license them to news and entertainment organizations.  The market and potential market for such photographs is obviously vast and extends to, *inter alia*, Internet based stock imagery websites (such as istockphoto.com), which allow artists and photographers to blindly license images to anyone willing to pay a license fee.  See iStock Photo, http://www.istockphoto.com (last visited Sept. 6, 2012).  iStockPhoto specifically provides for licensing works for "Editorial purposes:  printed magazines, newspapers, editorials, [and] newsletters."  See iStock Photo, http://www.istockphoto.com/help/licenses (last visited Sept. 6, 2012).  Stock imagery websites make up (or made up) at least part of the potential licensing market for the photograph.

Particularly when viewing the facts in the light most favorable to KATZ, as the court must, there should be no question but that CHEVALDINA's use of the photograph would negatively impact its market by her reproduction and display of it at least seven different times, all for its entertainment value.  As explained above, such use is anything but transformative.  She has no need to use the photograph other than to enhance the bland text on her web pages and draw attention to them.  This is precisely the reason the photograph appeared with the Haaretz article -- to draw in viewers with the photograph's imagery.  Clearly, the photograph has (or had prior to CHEVALDINA's infringement) actual and potential markets for, *inter alia*, licensing and/or use in connection with editorial or informative content, just as used by CHEVALDINA.  Through her unauthorized use, CHEVALDINA has usurped these markets.

It is immaterial whether or not KATZ currently intends to sell or license publication rights in the photograph.  A plaintiff's "current desire or ability to avail themselves of the market for [a] . . . photograph is immaterial to . . . whether there is potential for an adverse effect on the market for the photograph should the challenged use become widespread." Balsley v. LFP, Inc., 11-3445, 2012 WL 3517571, at *7 (6th Cir. Aug. 16, 2012); see also Monge, 2012 WL 3290014 (finding that a potential market for photos of a private wedding exists independent of any present intent not to sell or license publication rights); Worldwide Church of God, 227 F.3d at 1119 ("[I]t cannot be inferred from that . . . the absence of a conventional market for a work, the copyright to which is held by a nonprofit, effectively deprives the holder of copyright protection. If evidence of actual or potential monetary loss were required, copyrights held by nonprofits would be essentially worthless.").

CHEVALDINA's citation to eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006) and parenthetical summarization of Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010) is misleading and inapposite.  The Supreme Court in eBay was reviewing an injunction in a patent case and actually rejected the District Court's conclusion that "plaintiff's willingness to license its patents and its lack of commercial activity in practicing the patents would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue." eBay Inc., 547 U.S. at 393 (internal quotation marks omitted).  Similarly, CHEVALDINA describes Salinger as "declining to presume market harm in copyright cases when a copyright owner is not participating within the market." Second Motion to Dismiss, at 21-22.  But the Second Circuit in Salinger never stated such a general proposition and merely held that when reviewing a request for preliminary injunction irreparable harm will

not be presumed. Id. at 77, 82.  These are simply further attempts by CHEVALDINA to confuse the meaning of cited case law.

Lastly, and maybe most troubling, is CHEVALDINA's misrepresentation to the court concerning the assignment of the photograph to KATZ in support of her "effect on the market" argument.  Inexplicably, CHEVALDINA argues that the subject assignment "fails to assign the right to sue for past infringement."  Second Motion to Dismiss, at 22.  Not only does the KATZ assignment expressly include an assignment of "all claims or causes of action, whether asserted or not, relating thereto" (referring to the copyright in the photograph), but this language is virtually identical to the language used in the assignment at issue in Prather v. Neva Paperbacks, Inc., 410 F.2d 698 (5th Cir. 1969), which CHEVALDINA cites in footnote 4 of the Second Motion to Dismiss, and which was deemed to be a valid assignment of the right to sue for past infringement!  There can be no question but that KATZ has the right to sue for past infringement based on this assignment, and CHEVALDINA's argument to the contrary is nothing short of egregious.

V.   **Conclusion**

Viewing the facts in the light most favorable to KATZ, as the Court must, there can be no question but that KATZ states a claim for copyright infringement.  Indeed, based on CHEVALDINA's own admissions, the Court can easily conclude that her use of the subject photograph was anything but a "fair use."

For all these reasons, KATZ respectfully requests that CHEVALDINA's Second Motion to Dismiss be denied, and that the court grant such other and further relief deemed proper.[4]

---

[4] Should the Court somehow wish to convert CHEVALDINA's motion to a motion for summary judgment under Rule 12(d), KATZ respectfully requests sufficient additional time to conduct appropriate discovery and submit additional relevant briefing.

Dated: <u>September 6, 2012</u>                    Respectfully submitted,

                                                  PERETZ CHESAL & HERRMANN, P.L.
                                                  *Co-Counsel for Raanan Katz*
                                                  201 South Biscayne Blvd., Suite 1750
                                                  Miami, Florida  33131
                                                  Telephone:  305-341-3000
                                                  Facsimile:  305-371-6807

                                                  By: <u>/s Michael B. Chesal</u>
                                                       Michael B. Chesal
                                                       Florida Bar No. 775398
                                                       Email: mchesal@pch-iplaw.com
                                                       Josh E. Saltz
                                                       Florida Bar No. 70521
                                                       Email: jsaltz@pch-iplaw.com

Co-Counsel for Plaintiff:

Alan J. Kluger
Florida Bar No. 200379
Email: akluger@ klugerkaplan.com
Todd A. Levine
Florida Bar No. 899119
Email:  tlevine@klugerkaplan.com
KLUGER KAPLAN SILVERMAN KATZEN
 & LEVINE, P.L.
201 South Biscayne Blvd., 17th Floor
Miami, Florida  33131
Telephone:  305-379-9000
Facsimile:   305- 379-3428

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on <u>September 6,</u> <u>2012</u> on all counsel or parties of record in the manner specified on the Service List below.

<u>    /s Michael B. Chesal           </u>

## <u>SERVICE LIST</u>

Robert Charles Kain, Jr., Esq.
Kain & Associates, Attorneys at Law, P.A.
900 SE Third Avenue, Suite 205
Fort Lauderdale, FL 33316
Tel: 954-768-9002
Fax: 954-768-0158
Email: rkain@complexip.com
*Counsel for Defendant, Irina*
*Chevaldina*

**[via CM/ECF]**

Darren Joel Spielman, Esq.
Kain & Associates, Attorneys at Law, P.A.
900 SE Third Avenue, Suite 205
Fort Lauderdale, FL 33316
Tel: 954-768-9002
Fax: 954-768-0158
Email: dspielman@complexip.com
*Counsel for Defendant, Irina*
*Chevaldina*

**[via CM/ECF]**

Marc John Randazza, Esq.
6525 W. Warm Springs Rd., Suite 100
Las Vegas, NV 89118
Tel: 888-667-1113
Fax: 305-437-7662
Email: MJR@randazza.com
*Counsel for Defendant, Irina*
*Chevaldina*

**[via CM/ECF]**