UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22211-CIV-KING/MCALILEY

RAANAN KATZ,

     Plaintiff,

v.

IRINA CHEVALDINA,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

Plaintiff, Raanan Katz, holds the copyright to an unflattering photograph of himself, which Defendant, Irina Chevaldina, has published as part of highly critical blog articles she has written about Katz. Katz brought this lawsuit for copyright infringement against Chevaldina, asking this Court to enjoin Defendant from further use of the photograph.

Now pending before the Court are Defendant's Motion for Summary Judgment [DE 94] and Plaintiff's Motion for Summary Judgment [DE 92]. The Honorable James Lawrence King referred these motions to me and they are fully briefed.[1] For the reasons set forth below, I recommend that the Court grant Defendant's Motion for Summary Judgment because under the Copyright Act, Defendant's use of the photograph was, as a matter of law, protected fair use.

_____

[1] [*See* DE 51, 92, 93, 94, 95, 96, 99, 115, 116, 117, 118, 119, 120, 121, 122].

## I.     Background

### A.     Facts

#### 1.     Overview

Plaintiff Raanan Katz owns a number of shopping centers throughout Florida and New England, in addition to a minority stake in the Miami Heat professional basketball team.  [*See* DE 96-5, p. 2].  Plaintiff and his company, RK Centers (formerly RK Associates), are the subject of two blogs, whose author, Irina Chevaldina, is the Defendant in this action.  The blogs are highly critical of Plaintiff and his business practices. [DE 92, p. 2; 96-10].  Between May 2011 and September 2012, in conjunction with approximately two dozen blog posts, Defendant published an unflattering photograph of Plaintiff (the "Photo").  [DE 92, pp. 2-5; DE 96-10].  In an effort to obtain control over the Photo, Plaintiff entered into an Assignment of Copyright with the photographer on June 5, 2012, whereby the photographer assigned to Plaintiff all rights to the image.  [DE 96-14].  Plaintiff then asked Defendant to remove the Photo from her blog posts and, when she did not do so, Plaintiff filed this suit for copyright infringement. [DE 92, p. 5; DE 93, ¶¶ 30-31].  After filing suit, Plaintiff registered the Photo with the United States Copyright Office and obtained a Certificate of Registration.  [DE 96-15].

#### 2.     The Photo and Its Use

In February 2011, professional photographer Seffi Magriso took a photograph of Plaintiff while Plaintiff was attending a basketball practice in Jerusalem.  [DE 92, p. 2; 96-5].  The Photo is a headshot of Plaintiff which shows Plaintiff's tongue protruding

slightly from his mouth. [DE 96-5]. Plaintiff considers the Photo "ugly" and "candid and embarrassing." [DE 92, p. 2, 96-1, pp. 67, 96; 96-2, p. 2].

The Photo was first published in an Israeli newspaper known as Haaretz on February 22, 2011, accompanying an article headlined "Basketball / Ex-Maccabi Tel Aviv Co-Owner Closer to Buying into Hapoel Jerusalem." [DE 96-5]. The parties dispute whether the Photo was first published in the print edition of Haaretz or its online edition. [DE 117, ¶ 3]. The article favorably discussed the possibility of Plaintiff acquiring an interest in an Israeli professional basketball team. [DE 96-5]. It appears the Photo was used only to identify the Plaintiff. [*Id*].

Defendant's blogs, rkassociatesusa.blogspot.com and rkassociates.blog.co.uk, are devoted to criticism and commentary about Plaintiff and his company. [*See generally* DE 96-10; 57, pp. 8-9]. On May 3, 2011, Defendant first published the Photo on her blog after finding it online through a Google search. [DE 95-2, ¶¶ 2-3; 96-10, p. 1]. The blog posts that have been filed with the Court reveal that the Photo was either reproduced in its original state, sometimes accompanied by sharply worded captions, or it was cropped and pasted into derisive cartoons. [DE 96-10].

### 3.    Plaintiff's copyright

On June 3, 2012, Plaintiff entered into an Assignment of Copyright with the photographer who took the Photo. [DE 96-14]. The assignment conveys "all of the Photographer's right, title, and interest in and to the Photograph . . . and all rights of copyright therein." [*Id*.]. Plaintiff subsequently registered his copyright with the U.S. Copyright Office, which issued Certificate of Registration number VA 1-844-886 with an

effective date of November 14, 2012. [DE 96-15]. The Certificate identifies Israel as the nation of first publication, Magriso as the author, and states the Photo was not a work made for hire. [*Id*.]. After Plaintiff notified Defendant of the copyright registration, she removed the Photo from the blog posts in which it had been published. [DE 92, p. 5; 96-16].

### B.    Procedural History

On June 12, 2012, before he registered the copyright, Plaintiff filed this lawsuit against Defendant, alleging copyright infringement under 17 U.S.C. § 501. [DE 1].[2] The operative Amended Complaint claims that Defendant "knowingly, intentionally and willfully copied and publicly displayed" the Photo without Plaintiff's approval. [DE 10, p. 3, ¶ 14]. Plaintiff alleges that Defendant has "realize[d] profits or other benefits rightfully belonging to [Plaintiff]." [*Id*. at ¶ 16]. He also asks the Court to require her to destroy all remaining physical and electronic copies of the image. [*Id*. at p. 4].[3]

Plaintiff and Defendant have each filed motions for summary judgment which, in large measure, address the same issues. Significantly, Defendant does not deny using the Photo without permission. [DE 14, p. 7].[4] She challenges, however, the validity of Plaintiff's copyright, and claims she is entitled to summary judgment based on a number

---

[2] The original complaint also named Google, Inc., as a Defendant, but in an Amended Complaint filed July 20, 2012, Plaintiff withdrew his claims against Google, leaving Ms. Chevaldina as the lone Defendant. [DE 10].

[3]  In addition to a permanent injunction, Plaintiff sought "actual damages and any profits" accrued by Defendant. [*Id*.]. Plaintiff abandoned his claim for damages on August 8, 2013 when he entered a stipulation that "he and his related companies have suffered no economic harm as a result of Defendant's infringement. . . ." [DE 85].

[4]  That this is true, has already been recognized by the Court in its Order Denying Motion to Dismiss. *Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1315 (S.D. Fla. 2012).

of affirmative defenses, including fair use. [DE 57, pp. 4-12, *Affirmative Defenses*]. Defendant also maintains that Plaintiff brought this lawsuit for the improper purpose of silencing her blog. Plaintiff defends the validity of his copyright, and disputes Defendant's assertion of fair use.

## II.    Summary Judgment Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must identify pertinent parts of the record and establish the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Hilburn v. Murata Elec. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Once this burden has been met, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The court must view the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## III.    Analysis

The parties raise a number of arguments in support of their respective motions for summary judgment. One argument - fair use - goes directly to the merits of Plaintiff's claim and, I believe, clearly calls for summary judgment in Defendant's favor.[5]

---

[5] The summary judgment motions address other issues, principally: (i) whether the Photo is a United States work, in which case Plaintiff would have had to obtain a Certificate of Registration

## A.   Prima Facie Case of Copyright Infringement

The Copyright Act, 17 U.S.C. § 501, provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright. . . ." Among the rights conferred by copyright is the exclusive right "to reproduce the copyrighted work in copies. . . ." 17 U.S.C. § 106(1). Plaintiff must prove two elements to establish a prima facie case of copyright infringement:  1) ownership of a valid copyright; and 2) copying of constituent elements of the work that are original. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010). To satisfy the first element, the plaintiff must prove that the work is original and that he complied with applicable statutory formalities. *Id.* at 1233.

### 1.   Validity and Ownership of the Copyright

Regarding the first element, a certificate of copyright registration made before, or within five years after, first publication of the work, is prima facie evidence of the validity of the copyright and of the facts stated in the certificate. *Id.* at 1233 (citing 17 U.S.C. § 410 (c)). Plaintiff produced a certificate of copyright registration issued on November 14, 2012, nearly two years after the Photo's February 22, 2011, first publication and thus well within the deadline set forth in 17 U.S.C. § 410(c). [DE 96-15;

---

before commencing suit, (ii) whether the apparent lack of consideration for the Assignment of Copyright deprives Plaintiff of ownership of the copyright; and (iii) whether Plaintiff misused the copyright to bring this lawsuit for the improper purpose of silencing Defendant.  [DE 94, pp.9-15; 92, pp. 9-15].  It is unnecessary for the Court to reach these issues.

96-5]. The burden now shifts to Defendant rebut the presumption that the copyright was valid, which Defendant did not do.[6] *See Latimer*, 601 F.3d at 1233.

Defendant does argue that Plaintiff is not the owner of the copyright because the Assignment of Copyright allegedly lacked consideration, but it is doubtful that Defendant has standing to make this argument. *See Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) [of the Copyright Act] to avoid suit for copyright infringement."). It is not necessary to resolve that question here. Rather, I assume that Plaintiff owns the copyright.

In this manner, I find that Plaintiff has satisfied the first element of a prima facie case of copyright infringement.

## 2. Copying of Plaintiff's Copyrighted Material

Plaintiff must establish, as the second element of a prima facie case, that Defendant copied original elements of the copyrighted work. *See Latimer*, 601 F.3d at 1232-33. Defendant acknowledged that she used the Photo on her blogs without

---

[6] A defendant could rebut the presumption by demonstrating that "the work in which copyright is claimed is unprotectable for lack of originality." *Latimer*, 601 F.3d at 1232-33. A defendant may also overcome the presumption of validity by providing proof of deliberate misrepresentation in a copyright registration. *See Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011). Defendant did not make either argument here. [*See generally* DE 94, 118]. Defendant does not dispute originality of the Photo. While Defendant argues that Plaintiff misrepresented the nation in which the Photo was first published [DE 94, p. 9], this argument does not undermine the registrability of the copyright. *See Dream Custom Homes, Inc.*, 773 F. Supp. 2d at 1302 (misrepresentations regarding "originality, the nature of the materials to be copyrighted, and contested claims of authorship and ownership" go towards registrability of the copyright).

permission [DE 57, pp. 8-9 *Affirmative Defenses*], and does not dispute originality of the Photo. Thus, I find that Plaintiff established the second element and has put forth a prima facie case of copyright infringement.

**B.    Fair Use Defense**

Where a plaintiff demonstrates a prima facie case, the defendant can refute a claim of copyright infringement by establishing that she engaged in fair use of the work. *See* 17 U.S.C. § 107 ("Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . for purposes such as criticism [and] commentary . . . is not an infringement of copyright."). Defendant asserted fair use as an affirmative defense. [DE 57, pp. 8-9].

A claim of fair use presents a mixed question of law and fact. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). Fair use determinations may be decided on summary judgment.[7] *See Peter Letterese & Assoc., Inc. v. World Institute of Scientology Enters. Int'l.*, 533 F. 3d 1287, 1319 (11th Cir. 2008); *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[i]f there are no genuine issues of material fact or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as fair use of the copyrighted work.").

---

[7] Notably, both parties agree the Court can decide the question of fair use on summary judgment. [DE 94, pp. 15-23; 119, p. 7]

"The fair use doctrine . . . seeks to balance First Amendment concerns with the protections otherwise afforded authors by the Copyright Act." *Latimer*, 601 F.3d at 1239. Fair use "requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal citations, quotation marks omitted). Significantly, Section 107 of the Copyright Act expressly recognizes the unauthorized reproduction of copyrighted material for the purpose of criticism and commentary, as fair use. 17 U.S.C. § 107; *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F. 3d 1257, 1265 (11th Cir. 2001) ("copyright does not immunize a work from comment and criticism.").

In deciding whether a defendant's use of a work is "fair," courts must weigh the following four statutory factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; *see also Harper & Row*, 471 U.S. at 561 The fair use doctrine "is an equitable rule of reason; neither the examples of possible fair uses nor the four statutory factors are to be considered exclusive." *Peter Letterese and Assoc., Inc.*, 533 F.3d at 1308. The statutory factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.* I turn to consider each factor.

9

### 1.    Purpose and Character of Use

This first factor requires the Court to consider:  1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and 2) the degree to which the use is a "transformative" one. *Peter Letterese*, 533 F.3d at 1309.  The inquiry may be guided by the examples given in the preamble to § 107 of the Copyright Act, which look to whether the use is for criticism, comment, news reporting, and the like. *Campbell*, 510 U.S. at 578-79; *Dhillon v. Does 1-10*, No. C 13-01465 SI, 2014 WL 722592, *3 (N.D. Cal. Feb. 25, 2014) ("While the commercial use of copyrighted work is presumptively unfair, the Copyright Act expressly permits fair use for the purposes of criticism and commentary.").  The "central purpose . . . is to see . . . whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative."  *Campbell*, 510 U.S. at 579 (internal citations and quotation marks omitted).

### a.    Commercial or Non-commercial Use

I find that Defendant's uses of the copyrighted image were non-commercial.   The record contains approximately two dozen blog posts wherein Defendant published the Photo.  [DE 96-10].  Those posts are summarized as follows:[8]

---

[8] I have grouped certain posts that share a common subject matter.

| Date | Blog Topic | Location in Record |
|---|---|---|
| May 3, 2011 | RK Associates History and Some Facts<br><br>(references alleged criminal and racial discrimination charges related to Plaintiff's real estate activities) | [DE 96-10, p. 1] |
| September 18, 2011<br><br>September 25, 2012 | RK Associates and Raanan Katz Trying to Wipe Out Their Debt Using Miami Heat Players<br><br>How Miami Heat Owner Raanan Katz is Trying to Use Miami Heat Players to Wipe Out RK Centers Debt | [DE 96-10, p. 3]<br><br><br>[DE 96-10, p. 50] |
| September 18, 2011 | How RK Associates Ripped Off Single Mother of Special Needs Child | [DE 96-10, p. 6] |
| November 14, 2011 | Raanan Katz: Who is Next<br>(text of cartoon illegible) | [DE 96-10, p. 9] |
| [Date illegible] | Raanan Katz, Daniel Katz Looking for New Victim | [DE 96-10, p. 10] |
| December 13, 2011 | Raanan Katz Targets Fundamentals of American Democracy with Libel Lawsuit | [DE 96-10, p. 11] |
| February 5, 2012<br><br>May 1, 2012<br><br><br>May 18, 2012 | Raanan Katz "Business Model" Makes Defaults Profitable?<br><br>Raanan Katz: Operating Expenses, the Myth and the Reality?<br><br>RK Centers, Raanan Katz: Double Rent Demand is it | [DE 96-10, p. 13]<br><br><br>[DE 96-10, p. 36]<br><br><br>[DE 96-10, p. 37] |

| | | |
|---|---|---|
| | Legal?<br><br>(criticizes Plaintiff's purported rent collection practices) | |
| February 19, 2012 | Raanan Katz Gets Ready for Deposition?<br><br>(mocks Plaintiff's purported efforts to prepare to give testimony) | [DE 96-10, p. 15] |
| March 2, 2012 | Raanan Katz Tenant Was Found Guilty of a First-Degree Misdemeanor | [DE 96-10, p. 16] |
| March 4, 2012 | Why RK Centers Was the Wrong Choice<br><br>(discusses book Defendant purportedly was writing regarding her personal experience in business startup and development) | [DE 96-10, p. 17] |
| March 9, 2012<br><br>April 2, 2012 | Daniel Katz Saga of Fears of Violence Continues<br><br>RK Centers: Daniel Katz Real Fear, Fake Fear, or No Fear | [DE 96-10, pp. 19, 20]<br><br>[DE 96-10, p. 22] |
| April 18, 2012<br><br>April 19, 2012<br><br>April 26, 2012<br><br>April 29, 2012 | Raanan Katz is Making Money in Miami on Fire Sprinklers Repair?<br><br>RK Centers Maintenance Meeting in Progress<br><br>Raanan Katz Team is Working Really Hard Setting RK Centers Maintenance Goals? | [DE 96-10, p. 25]<br><br>[DE 96-10, p. 28]<br><br>[DE 96-10, p. 31] |

| | RK Centers: How to Rip-Off People on Common Area Maintenance in Miami?<br><br>(criticizes Plaintiff's purported common area maintenance practices) | [DE 96-10, pp. 33-34] |
|---|---|---|
| July 20, 2012 | Raanan Katz, Miami Heat Owner, Drops Lawsuit Against Google<br><br>(criticizes Plaintiff's purported litigation practices in this lawsuit) | [DE 96-10, p. 39] |
| August 27, 2012 | RK Centers, Raanan Katz, Free Speech with a Public Issue<br><br>(discusses a California lawsuit involving free speech issues that Plaintiff believed comparable to this case) | [DE 96-10, p. 42] |
| Sept. 10, 2012 | Memorandum of Lease Between RK Centers and Ross for Less<br><br>(criticizes Plaintiff's purported use of an automatic lease renewal clause) | [DE 96-10, p. 44] |
| Sept. 12, 2012 | Raanan Katz is America's Next Top Model?<br><br>(mocks Plaintiff's arguments in this lawsuit) | [DE 96-10, p. 45] |

| Sept. 15, 2012 | RK Centers Filed Lawsuit Against iProFix.com Inc. in Miami<br><br>(concerns a landlord-tenant lawsuit Plaintiff's company purportedly filed) | [DE 96-10, p. 47] |
|---|---|---|
| Sept. 23, 2012 | RK Centers Registered Trademark for Financial Affairs, Monetary Affairs<br><br>(references criticisms of Plaintiff's business practices) | [DE 96-10, p. 48] |

These blog posts all present unabashed criticism of, and commentary on, Plaintiff's business and litigation practices. The Copyright Act expressly identifies criticism and commentary as fair uses that do not amount to copyright infringement. *See* 17 U.S.C. § 107.

Plaintiff argues that Defendant's use is commercial, as shown by the March 4, 2012, post, in which Defendant declared her interest in writing a book titled "Why RK Centers Was the Wrong Choice." [DE 92, p. 20; 96-10, p. 17]. Defendant's singular statement that she intended to write a book about her experiences in business, even if one day acted upon, does not transform her blogs into a commercial venture. *See Dhillon*, 2014 WL 722592 at *4 (rejecting plaintiff's argument that "it is possible" defendant "realized some financial gain through the use of the headshot photo" because

"conclusory, speculative assertions are insufficient to raise a genuine issue of material fact to defeat summary judgment.").[8]

Significantly, there are no advertisements on Defendant's U.S. blog and minimal advertisements on the U.K. version, and those appear to be for the benefit of the blog-hosting service. [DE 96-10]. Defendant also testified that she has not made any money from her use of the Photo [DE 96-6, p. 18], and Plaintiff does not dispute this assertion. [DE 116, ¶ 21]. On this record, it simply cannot be said that Defendant used the Photo for commercial purposes.

### b.    Transformative Use

The second part of the first fair use factor asks whether the defendant's use of copyrighted material was "transformative."  A transformative use is one that takes copyrighted material and "add[s] something new, with a further purpose or different character, altering the first with new expression, meaning, or message. . . ."  *Campbell*, 510 U.S. at 579.  For a use to be transformative, the "copyrightable expression in the original work [must be] used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings. . . ."  *Castle Rock Ent. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 142 (2d Cir.1998); *Dhillon*, 2014 WL 722592 at *4 ("Whether a use is transformative depends upon whether the new use supersedes the objects of the original creation or instead, serves a new purpose.").

---

[8] Plaintiff also argues that Defendant "stands to gain from the exploitation of the Photo" in other ways: namely, through "notoriety within [sic] her peers, particular [sic] the Russian community. . . ." [DE 92, p. 20]. Plaintiff cites a single, general statement by Defendant at her deposition, to support this argument [*id.*]; it is entirely insufficient to establish his assertion.

No bright line marks the point at which the use of a copyrighted work makes the secondary work "transformative." *Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 185 (D. Mass. 2007). "Even making an exact copy of a protected work may be transformative, provided the copy serves a different function than the original work." *Dhillon*, 2014 WL 722592 at *4 (citation and quotation marks omitted). To evaluate whether Defendant's use of the Photo was transformative, the Court must compare Defendant's use of the Photo to its only other use: its publication by Haaretz.

Haaretz used the Photo to identify Plaintiff, in an article about the possibility of Plaintiff acquiring an ownership interest in an Israeli basketball team. Notably, that article cast Plaintiff is a favorable light. [DE 96-5]. In sharp contrast, Defendant used the Photo in blog posts that disparage Plaintiff. [DE 96-10]. In some posts, Defendant cropped and pasted the image of Plaintiff's face into cartoons that either depicted him wearing a dunce cap or otherwise ridiculed his behavior.[2] [DE 96-10, pp. 15-16, 28, 42]. In other posts, the derogatory captions "DEAL WITH HIM AT YOUR OWN RISK," or "HE RIPPED OFF SPECIAL NEEDS LITTLE JEWISH GIRL," were superimposed on the Photo. [DE 96-10, pp. 44-50]. Defendant did not use the Photo simply to identify Plaintiff, as did the Haaretz publication; rather, the record is clear that Defendant used it as a means of satirizing and criticizing Plaintiff. I find that Defendant's use of the Photo was transformative because it served a very different function than did its original use.

---

[2] Defendant also used the Photo to ridicule Plaintiff's son, Daniel Katz. [DE 96-10, pp. 19-23]

This case is similar to *Dhillon v. Does 1-10*, 2014 WL 722592. In *Dhillon*, the plaintiff owned the copyright to a headshot of herself which she used in connection with her campaign for State Assembly. *Dhillon*, 2014 WL 722592 at *1. The defendant published the headshot on its website with an article critical of the plaintiff's political views. *Id.* at *6. Finding that the defendant's use of the headshot was transformative, the *Dhillon* court wrote:

> the defendant used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics. Such a use is precisely what the Copyright Act envisions as a paradigmatic fair use. The Court finds that the defendant's use of the headshot photo was transformative because it served the purpose of criticism, rather than identification.

*Id.* at *5 (citation omitted); *see also* Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22-23 (1st Cir. 2000) (holding newspaper's use of posed studio photographs of a model, originally intended to be part of her portfolio, was transformative when they were published with a story about a controversy in a beauty contest in which the model participated); *contrast Fitzgerald*, 491 F. Supp. 2d at 185-6 (defendant's cropping and use of a previously published news photograph for the purpose of identifying a news subject was "non-transformative.").

### c.   Conclusion as to First Factor

I conclude that Defendant's use of the Photo was transformative and for the non-commercial purpose of criticism and commentary. Accordingly, the first fair use factor – the nature and character of the use – weighs in favor of Defendant, and a finding of fair use.

2.    **Nature of the Copyrighted Work**

The second factor in the fair use inquiry "recognizes that there is a hierarchy of copyright protection" depending on the nature of the copyrighted work. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1271 (11th Cir. 2001). Courts typically consider two aspects of the copyrighted work when evaluating this factor: (1) whether the work at issue is creative or factual, with creative works meriting greater protection, and fair use more likely to be found with factual works, and (2) whether the work was previously published. *See Harper & Row*, 471 U.S. at 563-64; *Peter Letterese*, 533 F.3d at 1312. Previous publication is relevant because an author has a right to decide whether or not to release private material; a defendant who usurps that right is less likely to be found to have made fair use of the material. *See Harper & Row*, 471 U.S. at 564.

There is no dispute that the Photo had been published before Defendant's use. [DE 96-5]. I turn then to the first inquiry: whether the photograph is primarily a factual or creative work.

Photography is recognized as an art form, but not all photographs are creative works. When evaluating this factor, courts have found photographs to have both factual and creative elements. The *Nunez* Court, for example, found that despite the photographer's active participation in the photograph, including choosing the model's clothing, styling, and pose, the resulting images "could be categorized as either factual or creative" because they "were not artistic representations designed primarily to express [the photographer's] ideas, emotions, or feelings. . . ." *Nunez*, 235 F.3d at 23. The *Dhillon* Court recognized that the headshot photo of the State Assembly candidate that

18

was used to identify her to the public was intended to be more informational than creative, but was persuaded by the photographer's declaration, setting forth the precise creative choices he made in shooting and developing the headshot photo, to find that factor weighed in plaintiff's favor. 2014 WL 722592 at *5. The *Fitzgerald* Court found that a freelance photographer's images of a well-known mobster, as he was being walked out of the police station after having been placed under arrest, was a factual work. 491 F. Supp. 2d at 188. The Court rejected the photographer's claim that his images were creative works because he made artistic decisions as to composition, timing and lighting. *Id.*[9]

Plaintiff argues that the Photo "managed to catch Katz in a candid position, which took some elements of creativity from the photographer." [DE 92, p. 23]. The Photo, however, captured Plaintiff in a public setting and was used simply to identify him. [DE 96-5]. There is no evidence that the photographer influenced, at all, the Plaintiff's activity, pose, expression or clothing. Also, it cannot be said that the Photo conveys the photographer's ideas or emotions. Because the Photo is a factual work that was previously published, I find that the second factor of the fair use inquiry weighs in favor of Defendant.

---

[9] The only authority Plaintiff cites to support his argument that the Photo is creative, is *Calkins v. Playboy Enterprises Intern, Inc.*, 561 F. Supp. 2d 1136 (E.D. Cal. 2008). The facts in *Calkins* presented a stronger case for finding that the photograph was creative. First, the photograph was taken by a professional photographer of a high school senior. Her parents had ordered a "deluxe [photo] session," with the photos intended to be given as gifts; the photo in question was a waist-up shot of the girl lying in a field. *Id.* at 1138, 1141. Further, the photograph had not been published, until Playboy did so without permission. *Id.* at 1142. On that record, the *Calkins* court concluded that the second fair use factor "only slightly" weighed in the plaintiff's favor. *Id.*

### 3.    Amount of the Work Used

The third fair use factor asks whether the amount and substantiality of the portion used – in relation to the copyrighted work as a whole – are "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. As the court in *Fitzgerald* noted, this factor "weighs less when considering a photograph — where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Fitzgerald*, 491 F. Supp. 2d at 188; *Nunez*, 235 F.3d at 24 ("[Defendant] admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story."). "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Dhillon*, 2014 WL 722592 at *5.

Here, Defendant either copied the entire Photo or, when posting cartoons, copied and inserted Plaintiff's face. [DE 96-10]. Depending on the topic of her blog post, Defendant copied only as much of the Photo as was needed to further her criticism. [*Id.*]. Because the copyrighted work at issue is a photograph, I find that the third factor is neutral and does not weigh either for or against a finding of fair use. *See Dhillon*, 2014 WL 722592 at *5 (finding third fair use factor "neutral" because "it would not have been feasible in these circumstances for the defendant to have copied less than the entire photo. . . ."); *Nunez*, 235 F. 3d at 24 (finding third fair use factor "of little consequence to our analysis.").

### 4.    Effect of the Use Upon the Potential Market

The fourth fair use factor requires courts to examine "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The inquiry focuses on:  (i) the extent of market harm caused by the alleged infringer, and (ii) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original. *See Campbell*, 510 U.S. at 590; *Suntrust Bank*, 268 F. 3d at 1274; *Nunez*, 235 F. 3d at 24. The Supreme Court has stated that market effect is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Here, there is no evidence that Defendant's use of the Photo caused any market harm.  To the contrary, Plaintiff has stipulated that "he and his related companies have suffered no economic harm as a result of Defendant's infringement."  [DE 85]. Similarly, Plaintiff has not shown that a potential market exists for the Photo or that Defendant's use threatens the potential market.

Significantly, Plaintiff disavows any interest in selling or profiting from the Photo. [DE 92, p. 24].  He nonetheless argues that he need not have a present intent to profit from the Photo, and that the potential future market for the Photo can exist independent of his current plans. [DE 119, p. 10]. Plaintiff cites a Ninth Circuit case, *Monge v. Maya Magazines, Inc.*, for the proposition that "[e]ven an author who had disavowed any intention to publish his work during his lifetime was entitled to protection of his copyright, first, because the relevant consideration was the potential market and, second,

21

because he has the right to change his mind." 688 F.3d 1164, 1181 (9th Cir. 2012) (citation and quotation marks omitted). *Monge* is distinguishable.

In *Monge*, the defendant was sued for copyright infringement after it obtained and published copies of a celebrity couple's secret wedding photographs. There, the court determined that the couple's desire to keep the wedding secret, and to withhold their wedding photos from publication, did not preclude them from one day changing their minds and publishing the photos. The court held that this possibility suggested potential future market harm, regardless of the couple's present intentions. *Id*. at 1181-82.

This case bears little resemblance to *Monge*. The celebrity couple in *Monge* had a demonstrated history of selling photographs to media outlets – including the defendant, which had previously paid $1,500.00 for other photos. *Id*. at 1181. It was clear that the defendant's use of the copyrighted material, if it became widespread, would impair the couple's ability to sell photographs of themselves in the future. *Id*.

This case is far more analogous to *Dhillon v. Does 1-10* and *Righthaven, LLC v. Jama*, No. 2:10-CV-1322 JCM (LRL), 2011 U.S. Dist. LEXIS 43952 (D. Nev. April 22, 2011). As already noted, the defendant in *Dhillon* published a headshot photograph that Plaintiff originally used in connection with her candidacy for public office, as part of an article that was critical of Plaintiff's views. 2014 WL 722592, *1, 6. In finding that the fourth factor weighed in favor of fair use, the *Dhillon* court recognized that:

> the plaintiff fails to allege that she ever attempted to sell the headshot photo at any time in the past, or that she had any plans to attempt to do so in the future. In short, the plaintiff has failed to allege that any market ever existed for the sale or

licensing of the headshot photo, or that such a market might have developed at any future time.

Id. at *6.

In *Righthaven*, the plaintiff bought the copyright to a previously published newspaper article that was critical of the Las Vegas police. Thereafter, the defendant, a non-profit, published the article in its entirety on its website. When conducting its fair use analysis, the court noted that it was required to "focus[] on the current copyright owner's use, which, at this juncture, has been shown to be nothing more than litigation-driven." *Id.* at *7.

In holding that the fourth factor weighed in favor of fair use, the *Righthaven* Court found that the plaintiff could not claim the newspaper's market as its own. *Id.* at *12. The court stated that "[p]laintiff has failed to allege that a market exists for its copyright at all, and the court declines to simply presume the existence of a market." *Id.* (citation and quotation marks omitted). The plaintiff thus "failed to show that there has been any harm to the value of the copyright." *Id.*

Here, Plaintiff is a businessman who testified that he considers the Photo "ugly" and "candid and embarrassing." [DE 96-1, pp. 67, 96; 96-2, p.2; 92, p. 2]. He does not claim to be a celebrity and does not claim Magriso's (the original copyright holder's) market as his own. Not surprisingly, Plaintiff has not tried to sell or license the Photo to anyone. [DE 96-2, p. 6]. Rather, Plaintiff testified that he obtained the Assignment of Copyright "[b]ecause I wanted to stop this atrocity." [DE 96-2, p.6] [*see also* DE 96-1, p. 105 (Plaintiff views the transfer of copyright as "a correction - correction of a mistake

23

that happened."). He has not used the Photo other than in this litigation [DE 96-2, p. 6],

and has done so here to prevent its publication.

Plaintiff has made no showing that there is a potential market for the Photo. The

possibility that Plaintiff may one day change his mind, and opt to publish the Photo he

has worked so hard to suppress, is remote. There is no evidence that Defendant's use of

the Photo had an impact upon any actual or potential market and, thus, I find that the

fourth factor weighs in favor of fair use.

## IV.   Conclusion as to Fair Use

Three factors in the fair use inquiry – the nature of Defendant's use, the nature of

the work, and the effect of the use on the potential market – weigh in favor of Defendant.

One factor – the extent of the work used – is neutral. As such, the balance of the fair use

inquiry weighs decidedly in favor of a finding of fair use.[10]   I therefore conclude that a

---

[10] Plaintiff makes one final argument: that Defendant acted in bad faith, and this prevents a finding of fair use. [DE 115, p. 20]. This argument has no merit. "Good faith" is not listed as a fair use factor in §107 of the Copyright Act. Although the Supreme Court, early on and in dicta, referenced good faith as pertinent to a fair use analysis, *Harper & Row*, 471 U.S. at 562, it has since called this into question. *See Campbell*, 510 U.S. 585, n. 18; *see also Bouchat v. Baltimore Ravens Limited Partnership*, 737 F. 3d 932, 942 (4th Cir. 2014) ("it is questionable whether allegations of subjective 'bad faith' could undercut a use that objectively was fair."). When courts have considered the issue of bad faith, they have looked at whether the alleged infringer used copyrighted material to usurp a commercial advantage that belonged to the copyright holder, or obtained the material in an underhanded manner. *See Harper & Row*, 471 U.S. 562-63; *Fuentes v. Mega Media Holdings, Inc.*, No. 09-22979-CIV, 2011 WL 2601356, at *11 (S.D. Fla. June 9, 2011) (*adopted* 2011 WL 2609550) (rejecting finding of bad faith because "this case does not involve an attempt to rush to the market just ahead of the copyright holder's imminent publication") (internal quotations and citations omitted).

Plaintiff's allegations of bad faith are directed at Defendant's conduct in a state court lawsuit in which Plaintiff sued Defendant for defamation. [DE 115, p. 20]. The Defendant's handling of that lawsuit is entirely independent of the circumstances surrounding her use of the Photo on her blogs. More to the point, there is no evidence that Defendant used the Photo to usurp a commercial advantage that the copyright afforded Plaintiff. Also, Defendant did not

reasonable trier of fact could reach only one conclusion: that Defendant's use of the photograph was fair, and did not constitute copyright infringement.

## IV.     Recommendation

Based on the foregoing, I **RECOMMEND** that Defendants' Motion for Summary Judgment [DE 94, 95], be **GRANTED**, and that Plaintiff's Motion for Summary Judgment [DE 92], be **DENIED**.

## V.     Objections

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable James Lawrence King **within 14 days of the date of this Report and Recommendation**. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida, this 17th day of June, 2014.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:
        The Honorable James Lawrence King
        All counsel of record

---

acquire the Photo through improper means; she encountered it during a Google Image Search. Plaintiff's bad faith argument lacks legal and factual support.